Samuel MORELAND, Petitioner,

v.

Margaret BRADSHAW, Warden, Respondent.

No. 3:05–cv–334.

United States District Court, S.D. Ohio, Western Division at Dayton.

April 10, 2009.

Nicholas George Gounaris, Richard Steven Skelton, Skelton McQuiston Gounaris & Henry, Dayton, OH, for Petitioner.

Charles L. Wille, Thomas E. Madden, Office of the Ohio Attorney General, Criminal Justice Section, Capital Crimes Unit, Columbus, OH, for Respondent.

**ENTRY AND ORDER OVERRULING SAMUEL MORELAND'S OBJECTIONS (Doc. # 110) TO MAGISTRATE JUDGE MICHAEL R. MERZ'S REPORT AND RECOMMENDATIONS (Doc. # 104); OVERRULING SAMUEL MORELAND'S OBJECTIONS (Doc. # 116) TO MAGISTRATE JUDGE MICHAEL R. MERZ'S SUPPLEMENTAL REPORT AND RECOMMENDATIONS (Doc. # 114); ADOPTING MAGISTRATE JUDGE MERZ'S REPORT AND RECOMMENDATIONS AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS IN THEIR ENTIRETY AND TERMINATING THIS CASE**

THOMAS M. ROSE, District Judge.

This is a habeas action brought by Petitioner Samuel Moreland ("Moreland") pursuant to 28 U.S.C. § 2254. Therein, Moreland seeks relief from both his conviction for aggravated murder with death specifications and his resulting death sentence.

On October 23, 2008, Magistrate Judge Merz issued a Report and Recommendations (doc. # 104) recommending that Moreland's Petition for a Writ of Habeas Corpus be denied and dismissed with prej-

udice. Moreland objected (doc. # 110) and the Warden responded to Moreland's Objections (doc. # 111).

On February 17, 2009, Magistrate Judge Merz issued a Supplemental Report and Recommendations again recommending that Moreland's Petition for a Writ of Habeas Corpus be denied and dismissed with prejudice. Moreland again objected. (Doc. 114.) The time has run and the Warden has not responded to Moreland's Objections to the Supplemental Report and Recommendations. Thus, this matter is before the Court on Moreland's Objections to the Report and Recommendations an on his Objections to the Supplemental Report and Recommendations.

As required by 28 U.S.C. § 636(b) and Federal Rules of Civil Procedure Rule 72(b), the District Judge has made a de novo review of the record in this case. Upon said review, the Court finds that Moreland's Objections to the Magistrate Judge's Report and Recommendations and his Objections to the Magistrate Judge's Supplemental Report and Recommendations are not well-taken, and they are hereby OVERRULED. The Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations are ADOPTED in their entirety.

Moreland's Petition for a Writ of Habeas Corpus is dismissed with prejudice. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**REPORT AND RECOMMENDATIONS**

MICHAEL R. MERZ, United States Chief Magistrate Judge.

This is a habeas corpus action brought by Petitioner Samuel Moreland pursuant to 28 U.S.C. § 2254 and seeking relief

from both his conviction for aggravated murder with death specifications and his resulting death sentence.

Mr. Moreland is represented in this proceeding by counsel appointed pursuant to 21 U.S.C. § 848(q) who did not represent him in any direct appeal proceedings.

### Statement of Facts

The Supreme Court of Ohio described the facts and circumstances leading to Mr. Moreland's indictment, trial, convictions, and adjudged sentence of death as follows:

On November 1, 1985, Tia Talbott resided at 35 S. Ardmore, Dayton, Ohio, with her five children: Dayron Talbott, age eleven, Daytrin Talbott, age seven, Datwan Talbott, age six, Daniel Talbott, age four, and Glenna Talbott, age three. Also residing at 35 S. Ardmore at this time were Tia Talbott's mother, Glenna Green, Glenna Green's boyfriend, Samuel Moreland, appellant, and Thurston Jones, Tia Talbott's boyfriend. Additionally, on November 1, 1985, Tia Talbott's sister, Lana Green and Lana's three children, Violana Green, Gregory Green and Tia Green, were spending the night at Tia Talbott's residence.

At approximately 10:30 p.m. on the evening of November 1, 1985, Tia Talbott, Thurston Jones and Gregory Green left the residence at 35 S. Ardmore to go to the grocery store. When Tia Talbott departed from the house, appellant was in Glenna Green's bedroom. At about the time of, or shortly after, Tia Talbott's departure, Glenna Green and appellant had an argument concerning appellant's need for some money to purchase beer or wine. Glenna Green refused to give appellant any money.

Appellant left Glenna Green's bedroom and went to his own room in the house. Appellant then returned to Green's bedroom where the argument continued until appellant again departed from Green's bedroom and absented himself for one-half hour. When appellant returned, the argument continued. Again, appellant left the bedroom and was gone for approximately ten minutes. Upon his final return, appellant was armed with a rifle. Without any exchange of words, appellant pointed the gun at Glenna Green and shot her. Appellant then shot Dayron Talbott's hand which was positioned in front of Dayron's face. Appellant then shot Dayron in the face, began laughing, and hit Dayron in the face with the end of the rifle.

Upon returning home from the grocery store, Thurston Jones and Tia Talbott discovered the bodies of Lana Green, Violana Green, Glenna Green, Datwan Talbott and Daytrin Talbott. Glenna Green died as a result of a gunshot wound to the head, as did Lana and Violana Green. Daytrin and Datwan Talbott each died as a result of multiple severe blunt force trauma to the head. Also discovered in the home was Tia Green, who had been injured as a result of a gunshot wound to the face; Glenna Talbott, who suffered numerous abrasions and contusions to her face and upper torso; and Dayron Talbott, who suffered an injury wound to his face and hand and significant number of fractures to his skull.

In the early morning of November 2, 1985, a man was seen and was heard shouting that he had killed his family. Later that morning, this man was seen with Samuel Thomas. The unidentified individual was wearing a black jacket. Thomas and appellant were together following the murders. After purchasing some alcohol, Thomas and appellant went back to Thomas' house. Subsequently, a car passed Thomas' home and appellant said, "I bet it was a cruiser pass." Thomas looked out of the window and saw a police cruiser passing by.

Appellant also commented that he had shot a gun and the bullet hole went in small and came out big. Thomas did not know to what appellant was referring. Later, Thomas drove appellant home to the residence at 35 S. Ardmore and appellant was arrested. Appellant was wearing blue jeans and a black jacket. While appellant was being read his *Miranda* rights, he told the arresting officer that the officer was "too late." Appellant was uncooperative when the police attempted to swab his hands in order to perform an atomic absorption test used to detect the presence or absence of gunshot residue. Appellant stated during this time, "I have Fifth Amendment rights." "In fact, the Constitution is written for guys like me." "You don't have any evidence against me, and I'll be damned if I'll help you." When the test was finally being conducted, appellant stated "[t]his isn't going to do any good anyway. I've been firing three to four hundred rounds at a range in Vandalia." Appellant was then asked if he signed in and out at the range. At this point, appellant changed his story and stated he had been firing the shots along a river bank.

A blood-alcohol test was performed on appellant. The test results showed .225 grams per 220 liters of breath alcohol. Further, appellant had been seen by Bruce Shackleford at approximately 11:00 p.m. on November 1, 1985. Shackleford testified that appellant did not appear to be drunk nor did appellant have difficulty walking or talking. Also, Richard Cunningham saw appellant on November 1, 1985, and at that time appellant did not seem to have difficulty walking.

The police subsequently recovered a .22 caliber rifle. Bullets found in some of the victims' bodies were .22 caliber. Fired and misfired casings found at the murder scene were also .22 caliber. Imprints from the butt of the rifle matched indentations on Datwan Talbott's forehead. The rifle, found by the police, was test-fired and the test bullets were compared to the bullets found in the victims' bodies. The test bullets and the bullets retrieved from the victims' bodies had the same characteristics. The test cartridges matched the fired and misfired cartridge casings found at the murder scene. With the exception of one unfired cartridge casing, all the cartridge casings found at the murder scene had been fired or misfired from a gun which was of the same make as that recovered by the police. Dayron testified that after he was shot and beaten by appellant, Dayron saw appellant with " * * * this long little thing that * * * [appellant] was putting through the barrel of the gun. And then * * * [appellant] pulled it out and took some kind of rag and wiped it off." The rifle recovered by police as a "magazine tube" positioned below the barrel of the gun. A rod used to compress the cartridge casings, and which causes the cartridges to feed into the chamber of the rifle, moves in and out of the magazine tube.

*State v. Moreland,* 50 Ohio St.3d 58, 58–60, 552 N.E.2d 894 (1990).

### State Court Proceedings

On November 8, 1985, the Montgomery County Grand Jury indicted Mr. Moreland on the following seventeen counts: ten counts of aggravated murder (firearm specifications three counts: aggravated circumstance specification on each count); one count aggravated robbery (firearm specification) and six counts of attempt to commit aggravated murder (firearm specification on each count). Return of Writ, Appendix attached thereto ("Appendix"), Vol. 1, at 13–26 (Doc. 23).

Trial to a three-judge panel commenced on April 14, 1986. *Id.,* Trial Transcript attached thereto ("Transcript"), Vol. 1, p. 1. On April 22, 1986, the panel rendered its verdict as follows: (1) Count One-guilty of the aggravated murder of Glenna Green with prior calculation and design and guilty of the First and Third Specifications and not guilty of the Second and Fourth Specifications; (2) Count Two-not guilty of aggravated robbery [related to Glenna Green's death] and all Specifications contained therein; (3) Count Three-not guilty of theft and the Specifications contained therein; (4) Count 4–guilty of the aggravated murder of Lana Green with prior calculation and design and guilty of the First and Third Specifications and not guilty of the Second and Fourth Specifications; (5) Count Five-not guilty of aggravated robbery [related to Lana Green's death] and all Specifications contained therein; (6) Count Six-guilty of the aggravated murder of Violana Green with prior calculation and design and guilty of the First and Third Specifications contained therein and not guilty of the Second and Fourth Specifications; (7) Count Seven-not guilty of aggravated robbery [related to Violana Green's death] and all Specifications contained therein; (8) Count Eight-guilty of the aggravated murder of Daytrin Talbott with prior calculation and design and guilty of the First and Third Specifications contained therein and not guilty of the Second and Fourth Specifications contained therein; (9) Count Nine-not guilty of aggravated robbery [related to Daytrin Talbott's death] and all Specifications contained therein; (10) Count Ten-guilty of the aggravated murder of Datwan Talbott with prior calculation and design and guilty of the First and Third specifications contained therein and not guilty of the Second and Fourth Specifications contained therein; (11) Count Eleven-not guilty of aggravated robbery [related to Datwan Talbott's death] and all Specifica-

tions contained therein; (12) Count Twelve-guilty of the attempted aggravated murder of Tia Green with prior calculation and design and guilty of the Specifications contained therein; (13) Count Thirteen-not guilty of aggravated robbery [related to Tia Green] and the Specifications contained therein; (14) Count Fourteen-guilty of the attempted aggravated murder of Glenna Talbott with prior calculation and design and guilty of the Specifications contained therein; (15) Count Fifteen-not guilty of aggravated robbery [related to Glenna Talbott] and the Specifications contained therein; (16) Count Sixteen-guilty of the attempted aggravated murder of Dayron Talbott with prior calculation and design and guilty of the Specification contained therein; (17) Count Seventeen-not guilty of aggravated robbery [related to Dayron Talbott] and the Specifications therein. Transcript, Vol. 3 at 790–93; Appendix, Vol. 1 at 236–39.

The three-judge panel heard mitigation testimony on April 28 and 29, 1986. Transcript Vol. 3 at 794–809. On April 29, 1986, the panel returned with its verdict sentencing Mr. Moreland as follows: (1) on Counts Twelve, Fourteen, and Sixteen, the panel sentenced Mr. Moreland to seven (7) to twenty-five (25) years on each count plus two years actual on each count to be served consecutively; and (2) on Counts One, Four, Six, Eight, and Ten, the panel sentenced Mr. Moreland to death. Transcript, Vol. 3 at 925–27; Appendix, Vol. 1 at 263–64. On May 13, 1986, the panel issued its written sentencing opinion as required by Ohio Revised Code § 2929.03(F). *Id.,* Vol. 3 at 278–81.

On May 18, 1986, Mr. Moreland appealed his conviction and sentence to the Montgomery County Court of Appeals raising the following seventeen Assignments of Error which are reproduced verbatim in the Appendix hereto. On Sep-

tember 16, 1988, the court of appeals overruled all of Mr. Moreland's assignments of error and affirmed the trial court's verdict and sentence. *Moreland*, 1988 WL 95894 at *7; Appendix, Vol. 2 at 300–13. On October 19, 1988, the court of appeals denied Mr. Moreland's Application for Reconsideration. *Id.*, Vol. 2 at 327–28.

Mr. Moreland filed his notice of appeal to the Ohio Supreme Court on November 11, 1988. *Id.*, Vol. 3 at 6. On April 24, 1989, Mr. Moreland filed his brief raising thirteen Propositions of Law which are reproduced verbatim in the Appendix hereto. The Ohio Supreme Court rejected all of Mr. Moreland's propositions of law and affirmed the judgment of the court of appeals. *Id.*; Appendix, Vol. 4 at 231–43; In addition, the Ohio Supreme Court independently reviewed Mr. Moreland's death sentence for appropriateness and proportionality and determined that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and that the sentence was neither excessive nor disproportionate. *Moreland*, 50 Ohio St.3d at 70, 552 N.E.2d 894. The United States Supreme Court denied certiorari. *Moreland v. Ohio*, 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990); Appendix, Vol. 4 at 270.

On May 30, 1991, Mr. Moreland filed in the Montgomery County Court of Common Pleas a petition for post-conviction relief pursuant to O.R.C. § 2953.21, raising forty causes of action which are reproduced in the Appendix.

On the same date that Mr. Moreland filed his petition for post-conviction relief, he also filed a Motion to Stay All Proceedings Under R.C. 2953.21 Pending in the Court of Common Pleas to allow time for the resolution of his action against the City of Dayton seeking certain public records. Appendix, Vol. 6 at 1–33; *see* Appendix, Vol. 5 at 451–96. The Court of Common Pleas granted Mr. Moreland's Motion to Stay. Appendix, Vol. 6 at 38. Subsequently, the court lifted the stay, the State filed a Motion for Summary Judgment as to all forty Causes of Action, and on January 12, 1998, the court granted the State's Motion. Appendix, Vol. 6 at 359–90. However, in its Order Sustaining Motion for Summary Judgment, Subject to Review, the trial court also granted leave to Mr. Moreland to conduct discovery. *Id.*

On February 11, 1998, Mr. Moreland filed a Notice of Appeal from the trial court's January 12, 1998, Order sustaining the state's motion for summary judgment. *Id.* at 448–49. The Montgomery County Court of Appeals issued a Decision and Entry on May 12, 1998, in which it determined that the trial court's January 12, 1998, Order in which it sustained the state's motion for summary judgment but granted Mr. Moreland leave to conduct discovery resulted in at least part of the matter "conditionally unresolved". *Id.* at 112–14. The appeals court *sua sponte* dismissed the appeal for lack of a final appealable order. *Id.* On November 9, 1998, the trial court then granted the state's motion for reconsideration and vacated its previous order allowing discovery. Appendix, Vol. 8 at 39–40.

Mr. Moreland appealed the trial court's November 9, 1998, Order Sustaining Respondent's Motion to Reconsider and Vacating Order for Discovery. *Id.* at 4. On appeal, Mr. Moreland raised the following claims:

### *ASSIGNMENT OF ERROR NO. I*

THE TRIAL COURT ERRED IN DENYING APPELLANT ANY OPPORTUNITY TO CONDUCT DISCOVERY OF FACTS AND EVIDENCE NECESSARY TO JUSTIFY HIS OPPOSITION TO SUMMARY DISMISSAL, OR TO DEVELOP AND SUPPORT HIS CLAIMS FOR RELIEF ONCE STATE MISCONDUCT BECAME APPARENT, THUS VIOLATING HIS

RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR NO. II

THE TRIAL COURT ERRED IN ISSUING INSUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN REGARD TO APPELLANT'S PETITION FOR POSTCONVICTION RELIEF.

### ASSIGNMENT OF ERROR NO. III

THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S SUMMARY JUDGMENT MOTION.

### ASSIGNMENT OF ERROR NO. IV

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT MORELAND AN EVIDENTIARY HEARING ON HIS PETITION FOR POST-CONVICTION RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR NO. V

THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF RES JUDICATA TO APPELLANT'S CLAIMS FOR RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### ASSIGNMENT OF ERROR NO. VI

OHIO'S POST-CONVICTION PROCESS IS NOT AN ADEQUATE AND CORRECT PROCESS.

### ASSIGNMENT OF ERROR NO. VII

THE TRIAL COURT ERRED IN DENYING THE MERITS OF APPELLANT'S POST-CONVICTION PETITION.

*Id.* at 79–188.

On January 7, 2000, the Court of Appeals for Montgomery County partially sustained Mr. Moreland's Assignments of Error No. III, IV, and V. *State v. Moreland,* No. 17557, 2000 WL 5933 (Ct.App. Montgomery Cty. Jan. 7, 2000); Appendix, Vol. 8 at 184–211. Specifically, the court sustained those Assignments of Error in regard to the issue of jury waiver. *Id.* The court of appeals therefore reversed the judgment of the trial court and remanded the matter for the purpose of conducting an evidentiary hearing on the issue of whether Mr. Moreland would have waived a jury had he been aware of the consequences of such a waiver. *Id.* The court noted that on remand, the question of whether Mr. Moreland was aware of the consequence of his waiver was limited to the specific issue of whether he was aware that he would forego the opportunity, present in a jury trial, to require two (2) independent fact finders to determine that the death penalty was warranted before that penalty could be imposed and whether he would have waived the right had he been so informed." *Id.*

Mr. Moreland appealed to the Ohio Supreme Court those portions of the court of appeals' Opinion that were unfavorable to him. *Id.* at 237.[1] In his Memorandum in

---

1. In addition, the state filed a cross-appeal. *Id.* at 240–41.

Support of Jurisdiction, Mr. Moreland raised the following Propositions of Law:

### PROPOSITION OF LAW NO. I

A TRIAL COURT'S FAILURE TO PROVIDE A CAPITAL POST–CONVICTION PETITIONER WITH ANY OPPORTUNITY TO CONDUCT DISCOVERY OF FACTS AND EVIDENCE NECESSARY TO JUSTIFY HIS OPPOSITION TO SUMMARY DISMISSAL, OR TO DEVELOP AND SUPPORT HIS CLAIMS FOR RELIEF ONCE STATE MISCONDUCT BECAME APPARENT, VIOLATES THE PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, §§ 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. II

A TRIAL COURT'S ISSUANCE OF INADEQUATE AND ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW IN REGARD TO A PETITION FOR POST–CONVICTION RELIEF, VIOLATES THE PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, §§ 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION, AND OHIO REV. CODE ANN. § 2953.21.

### PROPOSITION OF LAW NO. III

WHEN A TRIAL COURT GRANTS AN APPELLEE'S MOTION FOR SUMMARY JUDGMENT DESPITE THE EXISTENCE OF GENUINE ISSUES AS TO MATERIAL FACTS, SUCH RULING VIOLATES THE PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, §§ 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. IV

A TRIAL COURT'S DENIAL OF AN EVIDENTIARY HEARING TO A POST–CONVICTION PETITIONER WHEN HIS PETITION IS SUFFICIENT ON ITS FACT TO RAISE CONSTITUTIONAL CLAIMS WHICH DEPEND UPON FACTUAL ALLEGATIONS WHICH CANNOT BE DETERMINED FROM THE RECORD, DEPRIVES THE PETITIONER OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENT[S] OF THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. V

A TRIAL COURT'S IMPROPER USE OF THE DOCTRINE OF RES JUDICATA TO BAR A POST–CONVICTION PETITIONER'S CLAIMS FOR RELIEF VIOLATES THE PETITIONER'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§ 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. VI

A TRIAL COURT MAY NOT DENY A POST–CONVICTION PETITIONER'S PETITION TO VACATE OR SET ASIDE SENTENCE FILED PURSUANT TO OHIO REV. CODE ANN. § 2953.21 WHEN EACH OF THE

FORTY CLAIMS FOR RELIEF SET FORTH CONSTITUTIONAL VIOLATIONS UPON WHICH RELIEF SHOULD HAVE BEEN GRANTED.

Appendix, Vol. 10 at 7–173.

The Ohio Supreme Court declined jurisdiction and dismissed the appeal on May 17, 2000. *State v. Moreland,* 88 Ohio St.3d 1511, 728 N.E.2d 400 (2000); Appendix, Vol. 10 at 304.

On remand, the trial court held an evidentiary hearing at which Mr. Moreland testified. *Id.* at 37–174. In addition, Mr. Moreland's trial counsel, Louis Hoffman and Dennis Lieberman both testified. *Id.* On December 22, 2003, the trial court issued its Decision, Entry, and Order Dismissing Samuel Moreland's Petition for Post–Conviction Relief Which Requests Such Relief Based Upon the Assertion that Samuel Moreland Did Not Knowingly, Voluntarily, and Intelligently Waive His Right to the Benefit of the Two–Tiered Sentencing Process Available to a Defendant in a Capital Jury Trial. *Id.* at 227–42.

Mr. Moreland filed his Notice of Appeal on January 21, 2004, Appendix, Vol. 12 at 12, and in his appeal, he raised the following claims:

### FIRST ASSIGNMENT OF ERROR

THE LOWER COURT ERRED WHEN IT DENIED MR. MORELAND RELIEF ON THE GROUNDS THAT HIS JURY WAIVER WAS CONSTITUTIONALLY, STATUTORILY, PROCEDURALLY FLAWED.

### SECOND ASSIGNMENT OF ERROR

THE LOWER COURT ERRED WHEN IT RULED THAT MR. MORELAND IS NOT ENTITLED TO BE COMPETENT DURING HIS CAPITAL POST–CONVICTION PROCEEDINGS.

### THIRD ASSIGNMENT OF ERROR

OHIO'S POST–CONVICTION PROCEDURES NEITHER AFFORD AN ADEQUATE CORRECTIVE PROCESS NOR COMPLY WITH DUE PROCESS AND EQUAL PROTECTION UNDER THE FOURTH AMENDMENT.

Appendix, Vol. 12 at 31–64.

On October 8, 2004, the Montgomery County Court of Appeals overruled Mr. Moreland's assignments of error and affirmed the trial court's dismissal of his petition for post-conviction relief. *State v. Moreland,* No. 20331, 2004 WL 2436589 (2nd Dist. Oct. 8, 2004).

Mr. Moreland appealed to the Ohio Supreme Court raising the following claims:

### PROPOSITION OF LAW NO. I

According to the United States' and Ohio's Constitution, a waiver of the right to a jury trial must be voluntarily, knowingly, and intelligently given; any conviction reached without a jury and absent a valid waiver must be reversed.

### PROPOSITION OF LAW NO. II

Under both the United States and the Ohio Constitutions, a criminal defendant has the constitutional right to be competent, which derives from his constitutional right to due process, equal protection, and his right to freedom from a capital sentence rendered arbitrarily and capriciously.

### PROPOSITION OF LAW NO. III

Ohio's post-conviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the Fourteenth Amendment of the United States Constitution.

Appendix, Vol. 13 at 6–36.

The Ohio Supreme Court declined to accept Mr. Moreland's case for review.

*State v. Moreland,* 105 Ohio St.3d 1452, 823 N.E.2d 457 (2005) (table); 2005 WL 488916 (Mar. 2, 2005); Appendix, Vol. 13 at 62.

### Proceedings in this Court

On May 18, 2005, Mr. Moreland filed a Notice of Intention to File Habeas Corpus Petition. (Doc. 1). This Court granted Mr. Moreland's Motion for Appointment of Counsel, (Doc. 8, 9), and on September 30, 2005, Mr. Moreland filed his Petition for Writ of Habeas Corpus. (Doc. 14). Subsequently, this Court granted in part and denied in part Mr. Moreland's first Motion for Discovery and granted his Motion for Additional Discovery. (Doc. 31, 43). In addition, the Court granted in part and denied in part Mr. Moreland's Motion for Evidentiary Hearing. (Doc. 53). The Court held an evidentiary hearing on October 3 and October 25, 2007, at which the Court heard testimony from attorneys Louis Hoffman, Mathias Heck, Dennis Lieberman, and James Cole on the issues surrounding Mr. Moreland's waiver of his right to a jury trial. (Doc. 65, 68, 71, 73). In addition, there was briefing by the parties on the issue of the admission of Dr. Arthur Schramm's deposition testimony. (Doc. 65, 71, 75, 77, 80, 81, 83). The parties have filed post-hearing briefs, (Doc. 88; 91, 96), and the matter is ripe for Report and Recommendations on the merits.

Mr. Moreland has raised the following Grounds for Relief in his Petition:

### First Ground for Relief

Samuel Moreland's right to a jury trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated because he did not knowingly, voluntarily and intelligently waive his right to a jury trial in an Ohio capital murder case.

### Second Ground for Relief

Samuel Moreland's right to effective assistance of counsel as guaranteed under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated when counsel did not inform him of the consequences of a jury waiver in a capital case in the State of Ohio.

### Third Ground for Relief

Samuel Moreland's right to effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated during the penalty [sic] phase of Mr. Moreland's trial.

### Fourth Ground for Relief

Samuel Moreland's right to effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated during the mitigation phase of Mr. Moreland's trial.

### Fifth Ground of Relief

Samuel Moreland's right to due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated because his convictions for Aggravated Murder with a prior calculation and design rests upon insufficient evidence.

### Sixth Ground for Relief

Samuel Moreland's right to a fair trial, due process and confrontation under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [sic] violated when the Trial Court failed to conduct a full and meaningful evidentiary hearing into the competency and ad-

missibility of the child witness Daron [sic] Talbott's testimony.

### Seventh Ground for Relief

Samuel Moreland's right to a fair trial, due process and right of confrontation under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [was] violated when the Trial Court excluded opinion testimony from a defense expert on the issue of Daron [sic] Talbott's susceptibility to suggestion and influence from others regarding his eyewitness identification.

### Eighth Ground for Relief

Samuel Moreland's right to due process and freedom from cruel and unusual punishments under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [sic] violated when the death penalty was imposed in this case.

### Ninth Ground for Relief

Samuel Moreland's right to a fair trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated when the State Trial Court failed to permit discovery in Mr. Moreland's post-conviction relief hearing.

(Doc. 14).

### Standard of Review

#### I. Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") applies to all habeas cases filed after April 25, 1996. *Herbert v. Billy*, 160 F.3d 1131 (6th Cir.1998), *citing, Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Since Mr. Moreland filed his Petition well after the AEDPA's effective date, the amendments to 28 U.S.C. § 2254 embodied in the AEDPA are applicable to his Petition.

Title 28 U.S.C. § 2254, as amended by the AEDPA, provides:

. . .

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The AEDPA also provides that a factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). In addition, pursuant to the AEDPA, before a writ may issue on a claim that was evaluated by the state courts, the federal court must conclude that the state court's adjudication of a question of law or mixed question of law and fact was "contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

■ A state court's decision is contrary to the Supreme Court's clearly-established precedent if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law; or (2) the state court confronts a set of facts that are materially indistinguish-

able from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case", "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply[,] or [if the state court] unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407–08, 120 S.Ct. 1495. For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 520–21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams,* 529 U.S. at 407, 409, 120 S.Ct. 1495. An *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Id.* at 410, 120 S.Ct. 1495 (emphasis in original). In sum, Section 2254(d)(1) places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. *Id.* at 412, 120 S.Ct. 1495 (Justice O'Connor, concurring).

■ A state court decision is not "contrary to" Supreme Court law simply because it does not specifically cite Supreme Court cases. *Early v. Packer,* 537 U.S. 3, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). Indeed, "contrary to" does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. *Id.* at 8, 123 S.Ct. 362. The AEDPA prohibits the overturning of state decisions simply because the federal court believes that the state courts incorrectly denied the petitioner relief:

> By mistakenly making the "contrary to" determination and then proceeding to a simple "error" inquiry, the Ninth Circuit evaded Section 2254(d)'s requirement that decisions which are not "contrary to" clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts".

*Id.* at 11, 123 S.Ct. 362.

■ For the purposes of the AEDPA, the court reviews the last state court decision on the merits. *Howard v. Bouchard,* 405 F.3d 459, 469 (6th Cir.2005).

■ The AEDPA standard of review applies only to "any claim that was adjudicated on the merits in State court proceedings." *Danner v. Motley,* 448 F.3d 372, 376 (6th Cir.2006). A state court's failure to articulate reasons to support its decision is not grounds for reversal under the AEDPA. *Williams v. Anderson,* 460 F.3d 789, 796 (6th Cir.2006), *citing, Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001). Where the state court fails to adjudicate a claim on the merits, the habeas court conducts an independent review of a petitioner's claims. *Williams, supra.* That independent review, however, is not a full, *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *Williams, supra.*

## II. *Procedural Default*

▉ The standard for evaluating a procedural default defense is as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 749, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see also, Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir.2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a state's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million,* 201 F.3d 711, 716 (6th Cir.2000); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright,* 433 U.S. at 87, 97 S.Ct. 2497.

▉ The Sixth Circuit Court of Appeals requires a four-part analysis when determining whether a habeas claim is barred by procedural default. *Reynolds v. Berry,* 146 F.3d 345, 347–48 (6th Cir.1998), *citing Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986); *accord Lott v. Coyle,* 261 F.3d 594 (6th Cir.2001), *cert. denied,* 534 U.S. 1147, 122 S.Ct. 1106, 151 L.Ed.2d 1001 (2002).

First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

. . .

Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d at 138.

### *Merits of the Petition*
#### *First Ground for Relief*

**Samuel Moreland's right to a jury trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated because he did not knowingly, voluntarily and intelligently waive his right to a jury trial in an Ohio capital murder case.**

In this Ground for Relief, Mr. Moreland raises two subclaims. The first is that he did not knowingly, voluntarily, and intelligently waive his right to a jury and the second is that he was under the influence of sodium pentothal when he executed the jury waiver form.

As noted above, Mr. Moreland raised his claims with respect to his jury trial right in

the post-conviction remand proceedings. After holding a hearing and taking testimony on the issue, the trial court rejected that claim. The Montgomery County Court of Appeals affirmed. The Ohio Supreme Court implicitly adopted the appeals court's determinations when it declined to take jurisdiction of the appeal. Therefore, this Court looks to the post-conviction appeals court's decision for purposes of habeas review.

In affirming the trial court, the court of appeals wrote:

> Lieberman testified that Moreland signed the waiver in open court, on the record (which cannot now be located) before the presiding judge, Carl Kessler (now deceased). He testified that whether to waive a jury was up to the client, informed by his professional advice, and that he would not permit a client to sign a waiver if "he didn't ... know what was going on ...." Lieberman testified that he did not recall Moreland having "any difficulties" that would have prevented him from understanding the effect of waiving trial by jury, nor Moreland ever questioning why a jury wasn't hearing his case. In response to questions by the trial court, Lieberman testified that his and Hoffman's advice to waive a jury was based on their desire to avoid the death penalty, that Moreland understood this objective that the attorneys believed that this objective had a better chance of success with a three-judge panel, and that Moreland bought into this strategy. Lieberman could not recall whether the in-court execution of the jury waiver occurred April 11, 1986–the date it was filed at 4:02 p.m.-or at an earlier date. (He said the jury waiver was contingent on the selection of two "acceptable" judges to complete the panel with Judge Kessler, and would have been withdrawn if two acceptable judges could not be seated on the panel. Judge Kessler

may have obtained the waiver prior to final selection of the other two panel members).

. . .

Moreland argues that the requirements of R.C. 2945.05 were not followed and that reversal is necessary citing *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766....

We reject this argument. The jury waiver filed in this case April 11, 1986, was signed by Moreland. The waiver language is identical to the language except "a Panel of Three Judges" is substituted in place of "a Judge". Lieberman recalled that Moreland executed the waiver in open court before Judge Kessler.... Although it is unfortunate that a transcript of the waiver proceeding cannot be found, this is not a basis for reversing Moreland's conviction given the other evidence of record. Although not essential to the disposition of this argument, we do note that *Pless* also holds that "failure to comply with R.C. 2945.05 may be remedied only in a direct appeal from a criminal conviction."...

In our judgment, the items of evidence relied upon by Moreland do not affect the propriety of the trial court's determination of the remanded issues. The facts that the waiver does not show a date of signature or witness signatures, that there is no transcript of the waiver proceeding, and that a newspaper article reports the waiver occurred April 11, are, at most, matters affecting the weight of the evidence. This is also true of Hoffman's and Lieberman's affidavits and their lack of capital case defense work under the 1981 revision of Ohio's death penalty statutes. It is obvious that Moreland did not prepare the affidavit that he signed in 1991, and the trial court acted within its discretion in

crediting Lieberman's testimony over that affidavit.

Moreland claims that his waiver is invalid because he underwent a sodium pentothal interview around midday on April 11, 1986, the same day the jury waiver was *filed*. The trial court concluded that this should not affect its determination that Moreland had failed to carry his burden of proof on the remanded issues. As the trial court observed, it is not certain that the waiver was even executed on April 11, and Lieberman had testified that he would not have allowed the waiver proceeding to continue had he thought Moreland was incapable of understanding what was going on. Taking into account this evidence, and the lack of any evidence that the sodium pentothal actually affected Moreland's judgment, we believe the trial court properly disposed of this contention. We reject Moreland's contention in the alternative that this matter must be remanded for yet another hearing on whether the sodium pentothal interview influenced his judgment. Moreland clearly bore the burden of proof on the remanded issues and failed to carry that burden.

*Moreland*, 2004 WL 2436589 at *1–4; Appendix, Vol. 12, p. 223.

■■■ The right to a jury is fundamental. *Haliym v. Mitchell*, 492 F.3d 680, 698 (6th Cir.2007), citing *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Sixth Amendment's guarantee of the right to trial by jury is applicable to the States under the Fourteenth Amendment. *Duncan*, 391 U.S. at 149, 88 S.Ct. 1444. Waivers of constitutional rights not only must be voluntary but must also be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. *Haliym*, *supra*, citing *Brady v. United States*, 397 U.S. 742, 748, 90

S.Ct. 1463, 25 L.Ed.2d 747 (1970). Whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case. *Haliym*, *supra*, citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268 (1942). A petitioner bears the burden of proving that his waiver of a jury trial was not knowing, voluntary, or intelligent. *Haliym*, *supra*, citing *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004). Although the Sixth Circuit has not stated the precise formula for what constitutes the constitutionally minimum understanding that a defendant must possess in order to validly waive his right to a jury, a waiver satisfies the "voluntary, knowing, and intelligent" requirement, if the defendant "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Haliym*, *supra*, citing *Sowell*, 372 F.3d at 836(additional citations omitted). Although an on-the-record colloquy with the court is advisable, it is not constitutionally required. *Haliym*, *supra*, citing *Sowell*, 372 F.3d at 832 n. 5.

At the outset, this Court notes that the record contains a copy of a "Waiver of Jury" form which Mr. Moreland signed. The form reads:

I, Samuel Moreland, defendant in the above cause [State of Ohio vs. Samuel Moreland, Case No. 85–CR–2117], hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Panel of Three Judges of the Court in which the said cause may be pending, I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.

Appendix, Vol. 1 at 216.

There is no dispute that there is no transcript of any proceedings which reflect

that that Mr. Moreland signed the waiver in open court. In other words, there is nothing in the record of the original state court proceedings to indicate that Mr. Moreland was advised of the consequences of waiving his right to a jury trial or that there was a colloquy between Mr. Moreland and the court. Nevertheless, as more specifically described below, the transcripts of both the post-conviction hearing in state court and the evidentiary hearing in this Court, establish that Mr. Moreland executed the waiver after his counsel discussed with him his right to a trial by jury. Additionally, Mr. Moreland's counsel explained to him the strategy for preferring trial to a three-judge panel as opposed to a jury.

Although Mr. Hoffman, Mr. Moreland's lead trial counsel, testified at the post-conviction hearing that he did not specifically recall being in the courtroom for Mr. Moreland's execution of the jury waiver, he testified that he recalled that at least two weeks before trial he discussed with Mr. Moreland various things regarding waiving a jury. Appendix, Vol. 11 at 54 (Transcript of Post–Conviction Relief Hearing held Sept., 2002).[2] Similarly, Mr. Hoffman testified before this Court that although he did not recall being in the courtroom when Mr. Moreland waived his jury right, he had a "reconstituted memory" of being in the bailiff's office prior to other counsel going into the courtroom for the waiver. Transcript of October 3, 2007, hearing ("Habeas Hearing Transcript") at 10–11 (filed Oct. 27, 2007) (Doc. 68). Mr. Hoffman also testified that he believed that at the time Mr. Moreland waived his right to a jury, he was competent to do so. *Id.* at 38. In addition, Mr. Hoffman testified that the primary consideration in advising Mr. Moreland as to waiving a jury

was the inflammatory nature of the evidence in the case and his impression that a panel of judges might be more dispassionate with regard to the display of the gruesome pictures in the case. *Id.* at 48–49. Mr. Hoffman testified that the fact Mr. Moreland was not testifying at trial was another factor that he considered in advising Mr. Moreland about the waiver. *Id.* at 49. Additionally, Mr. Hoffman testified that the fact that there were five victims, some of whom were children, weighed in his advice to Mr. Moreland regarding waiving a jury. *Id.* at 60.

Mr. Lieberman, Mr. Moreland's co-counsel at trial, testified in the state hearing that he recalled reviewing with Mr. Moreland the procedural issues and choices involved in trying a case before a jury and trying it to a three-judge panel. Transcript, Vol. 11 at 72. Mr. Lieberman also testified that: conversations with Mr. Moreland related to whether to waive a jury took place over days, if not weeks, *Id.* at 71, 79; a critical consideration was what judges would be on a panel, *Id.* at 72; could not recall whether he specifically covered the issue of the benefit of a judge reviewing a jury's recommendation for death, *Id.* at 73; he believed that a three-judge panel might be sympathetic to a non-death penalty argument as opposed to a jury which might be inflamed by "what were some pretty gruesome pictures of women and children", *Id.* at 74; counsels' opinion was that the best way to avoid the death penalty was for Mr. Moreland to be tried by a three-judge panel, *Id.;* he had a specific memory that a courtroom proceeding took place during which Mr. Moreland and Judge Kessler had a discussion about jury waiver, but that he could not recall if it occurred on April 11, 1986; *Id.* at 77–78,

**2.** The pagination which this Court cites is that used for purposes of the Appendix as opposed to that used for purposes of the Transcript.

80; Mr. Moreland may have executed the jury waiver form on some date different than when it was filed with the clerk, *Id.* at 42; the form was not filed until such time as counsel were "concrete on who the three-judge panel was going to be", *Id.* at 82; that in every case in which a client of his waived a jury, it was his practice to explain to the client the procedures of a jury trial and the procedures of what would happen if the client waived a jury, *Id.* at 104; he would never have allowed a client to sign a jury waiver if he had any impairment where he didn't know what was going on, *Id.* at 118; Mr. Moreland signed the form in front of him (Mr. Lieberman), Judge Kessler, and [prosecutor] Jim Cole in open court and there was no indication that Mr. Moreland was under any type of inhibition nor was there any type of problem that would prevent him from knowing he was signing a waiver form that he [Mr. Lieberman] had previously explained to Mr. Moreland, *Id.;* at no time during the trial did Mr. Moreland say anything about three judges being there or question where his jury was, or say that he wanted a jury, *Id.* at 120; and that Mr. Moreland made a statement, not under oath, to the three-judge panel and never said anything about the absence of a jury. *Id.*

Mr. Lieberman testified before this Court that his recollection was vague as to when the jury trial waiver was done before Judge Kessler. Habeas Hearing Transcript at 218. Mr. Lieberman testified further that: his experience with Judge Kessler was that he would receive an executed waiver of jury on one day, but not file it until another day, *Id.* at 219; the actual jury waiver may have been signed a day or two or three or four before the day it was filed because they were trying to determine what judges would sit on the panel, *Id.;* he recalled the court reporter, the bailiff, the judge, Mr. Cole, and himself present in the courtroom for the jury waiver, *Id.* at 223; at the time of the post-conviction hearing he did not have a specific memory of Mr. Moreland signing the jury waiver document, but that he now had a recollection of Mr. Moreland sitting at counsel table writing on the document, *Id.* at 229; the discussions with Mr. Moreland about the jury waiver took place for perhaps weeks before the waiver actually occurred, *Id.* at 236; the number of deaths involved, the gruesome nature of the pictures, and the inflammatory evidence, were prominent in the strategy for waving a jury and having it tried by a three-judge panel, *Id.;* prior to being co-counsel for Mr. Moreland, he (Mr. Lieberman) had tried about 20–25 first and second degree felony cases in state court and federal court, *Id.* at 262; he had conversations with Mr. Moreland over days, if not weeks, on the issue of waiving a jury, *Id.* at 266; as a standard practice, he would have reviewed with Mr. Moreland the nature of the jury process including the fact that the jury would have issued a sentencing verdict in the form of a recommendation and the fact that if the jury recommended death, the judge would determine whether to accept that recommendation but if the jury recommended life, the court would sentence him to life, *Id.* at 272–73; he could not recall the exact words he used, but it would have been his practice to explain those things, *Id.* at 274; although Mr. Moreland's was his first death penalty case, he had previous clients who waived the jury right and his practice was to explain the procedures and consequences of doing so, *Id.* at 275; Mr. Moreland never said he did not want to waive his jury trial right, *Id.* at 279; he had no reason to believe that Mr. Moreland was not able to knowingly, voluntarily, and intelligently waive his right to a trial by jury, *Id.* at 267; he remembered that at the waiver proceeding looking at and speaking with Mr. Moreland and thinking

that he was fine and that he knew what he was doing, *Id.* at 298; he had no recollection of Mr. Moreland indicating that he did not understand the proceedings and if he had thought he did not understand, he (Mr. Lieberman) would not have let the proceedings take place; *Id.* at 289; he made it clear to Mr. Moreland that one of the goals was to save his life and keep him from being sentenced to death, *Id.* at 300; and that he had no specific recollection of anything that Judge Kessler said to Mr. Moreland as it related to the jury waiver, *Id.*, at 304.

James Cole testified at the Habeas Hearing that at the time of Mr. Moreland's 1986, trial, he was an assistant prosecutor for Montgomery County and he participated in the prosecution of Mr. Moreland. Habeas Hearing Transcript at 311. Mr. Cole testified further that: Matt Heck, Jr. and Herb Jacobson [since deceased] also participated in the prosecution, *Id.* at 312; he (Mr. Cole) participated in all open sessions in court relating to Mr. Moreland's case, *Id.* at 319; he recalled that prior to the trial there were discussions with Mr. Moreland's attorneys, himself, and Mr. Heck about the possible waiver of Mr. Moreland's right to trial by jury, *Id.* at 321; the discussions accelerated probably a week before trial and included discussing the members of a three-judge panel; *Id.* at 321–22; Judge Kessler indicated that if Mr. Moreland waived a jury trial he would allow the prosecutors and defense counsel the opportunity to give input regarding who would compose the three-judge panel, *Id.* at 323; he recalled that Mr. Moreland ultimately did waive trial by jury, *Id.* at 326; he was present in open court when Mr. Moreland signed the jury waiver document as were Judge Kessler, the bailiff, the court reporter, Mr. Moreland, Mr. Hoffman, and Mr. Lieberman, *Id.* at 326–27; he could not recall the precise colloquy between the parties at the time of the waiver, *Id.* at 329; he did not see Mr.

Moreland engage in any type of behavior nor did he indicate that he did not understand the information that Judge Kessler was giving him; *Id.* at 333; he saw no indication by Mr. Moreland that he wanted to change his mind, *Id.* at 336; he did not have an independent recollection of seeing him actually, physically signing the document; *Id.;* he never saw Mr. Moreland do anything nor hear him say anything during subsequent proceedings that indicated he was surprised or concerned that there was no jury present; *Id.* at 337; and that he observed neither demeanor or speech by Mr. Moreland that raised any concerns that Mr. Moreland was under the influence of anything that would affect his decision to waive his jury right. *Id.* at 357.

Mathias Heck testified at the Habeas Hearing that along with two other prosecutors, he represented the State of Ohio in the prosecution of Mr. Moreland. Habeas Hearing Transcript at 125. Mr. Heck also testified that: he was not present when Mr. Moreland waived a jury trial, *Id.* at 134; the prosecutors and Mr. Moreland's counsel had conversations about waiving a jury for six weeks to two months before trial, *Id.* at 135; during that time, the discussions were about who would be on the three-judge panel if Mr. Moreland waived a jury, *Id.* at 137–38; during the time of the discussions about the make-up of the panel, Mr. Moreland's counsel would tell the prosecutors that they would speak with Mr. Moreland about it, *Id.* at 143; he was present at the entire trial of the matter and he never saw Mr. Moreland make any statement, outcry, or display any sign that he was surprised, or did not understand why, he was not being tried before a jury, *Id.* at 145; during the penalty phase, Mr. Moreland never said anything about a jury not being present, *Id.* at 146; he searched the records center and transcripts and could not find any transcript of a hearing in which Mr. Moreland waived

his jury right, *Id.* at 151–52; and that within a week or so of the trial, because of the representations that Mr. Moreland's counsel made, he knew that the trial would not be before a jury and the only issue to be resolved was who would be on the three-judge panel. *Id.* at 162.

Mr. Moreland did not testify at the Habeas Hearing, but at the Post–Conviction Hearing he testified that his counsel wanted him to be tried before a three-judge panel but that he didn't like the odds of a three-judge panel and wanted a jury and that it "infuriated" Mr. Hoffman and Mr. Lieberman that he wanted a jury. Appendix, Vol. 11 at 145. Mr. Moreland testified further that: his counsel told him that a three-judge panel would not sentence him to death, *Id.;* his counsel was so infuriated that they took him to the hospital and drugged him up, *Id.* at 146; the prosecutors and police were there at the hospital and they all took him into a room and told him that Judge Kessler ordered it, *Id.;* when he was in the bed at the hospital, they gave him a paper and told him to sign it and then they would let him go; *Id.;* he didn't have any option but to sign it and that it was a good, clever scheme, *Id.* at 147; he did not know that he was going to be taken out of his jail cell and brought to the hospital, *Id.* at 148; the police and prosecutors and his counsel were all in cahoots together, *Id.* at 151; he thought he was signing his release from the hospital and didn't know it was a jury waiver, *Id.* at 152; he was laying on his back, "hogtied, dressed up like a Christmas turkey" when they told him to sign the form, *Id.* at 154; his attorneys didn't file a motion for the drugs and Judge Kessler was the perpetrator who put him in the hospital for the drugs, *Id.* at 156; he didn't sign the waiver in open court but signed it in the hospital, *Id.* at 159; the only time his counsel discussed a three-judge panel with him was at the hospital, *Id.* at 160–63; and that during the mitigation phase of his trial, his

counsel purposely asked him questions to get him into trouble so that he would be sentenced to death, *Id.* at 167.

The court of appeals properly determined, and this Court likewise concludes, that Mr. Moreland failed to show that his waiver of a jury trial was not knowing or voluntary. With the exception of Mr. Moreland's self-serving and, at times incomprehensible, testimony the evidence introduced at both the Post–Conviction Hearing and the Habeas Hearing is consistent as to the following. First, all of the attorneys involved in the trial of the matter testified that they began having discussions at least several weeks before the beginning of the trial as to a jury trial waiver and that the only issue that needed to be resolved before Mr. Moreland's waiver became effective was what judges would be on the three-judge panel. In addition, all of the attorneys involved in the case, with the exception of Mr. Hoffman, testified that they recalled being in open court when Mr. Moreland waived his jury trial right. Further, each of the attorneys involved in Mr. Moreland's case, both defense and prosecution, testified that he never observed Mr. Moreland engage in any behavior or verbalize any concern which indicated he did not know why a jury was not present during the trial or why there was a three-judge panel instead of a jury. Finally, each of the attorneys testified that he did not observe Mr. Moreland engage in any behaviors or express anything verbally that indicated he did not understand the proceedings or the fact that he was waiving his right to a trial by jury.

As noted above, Mr. Moreland also argues that his waiver was invalid because he was under the influence of sodium pentothal when he executed the written waiver.

There is no dispute that Mr. Moreland was taken to St. Elisabeth's Hospital where a physician administered sodium pentothal and another physician, a psychiatrist, interviewed Mr. Moreland. The evidence shows that the administration of the sodium pentothal occurred on April 11, 1986, during the period of about 12:05 p.m. to 1:35 p.m. and that the jury waiver form which Mr. Moreland executed with filed with the clerk on April 11, 1986, at 4:02 p.m. However, even if Mr. Moreland executed the jury waiver form on the date it was filed, the evidence does not show that Mr. Moreland was experiencing any effects from the sodium pentothal either at the time of the hearing or at the time he executed the form. As noted above, each of the attorneys involved in the matter, that is, Mr. Hoffman, Mr. Lieberman, Mr. Cole, and Mr. Heck, testified that he did not observe Mr. Moreland engage in any behavior that indicated he did not understand the proceedings or that he was waiving his right to trial by jury. Mr. Moreland's self-serving and somewhat incomprehensible Post–Conviction Hearing testimony simply does not rebut the testimony of all counsel of record. Indeed, that testimony is confirmed by and entirely consistent with the testimony those gentlemen gave at the Habeas Hearing.

During the pendency of this action, the Ohio Supreme Court issued its decision in *State v. Lomax*, 114 Ohio St.3d 350, 872 N.E.2d 279 (2007), in which it held that Ohio Revised Code § 2945.05 requires that a defendant's written waiver of the right to a jury trial be made in open court and that to satisfy the "open court" requirement, there must be some evidence in the record that the defendant, while in the courtroom and in the presence of counsel, if any, acknowledged the jury waiver to the trial court. *Id.* at 356, 872 N.E.2d 279.

 Even assuming that Mr. Moreland has properly raised in this habeas action

an alleged violation of Ohio Revised Code § 2945.05, he would not be entitled to habeas relief based on that claim. Generally, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. *See Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). State courts are, after all, are the final arbiters of the state law's meaning and application and the federal habeas court is not the appropriate forum to adjudicate such issues. *Summers v. Leis*, 368 F.3d 881, 892 (6th Cir. 2004). Any claim that there was a violation or Ohio Revised Code § 2945.05 is a question of state law and therefore not a proper ground for habeas relief.

For these reasons, Mr. Moreland's First Ground for Relief should be denied.

### Second Ground for Relief

**Samuel Moreland's right to effective assistance of counsel as guaranteed under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated when counsel did not inform him of the consequences of a jury waiver in a capital case in the State of Ohio.**

 Mr. Moreland raised this claim in the Post–Conviction proceedings and the state courts addressed the claim on the merits. In affirming the trial court, the Montgomery County Court of Appeals found:

The trial court's determination that Moreland failed to prove that he was unaware of the two-tiered sentencing process before he waived a jury trial was based primarily on the testimony of Denis Lieberman, Moreland's co-counsel at trial. Moreland testified but, as the trial court observed, his testimony was not helpful as it was not for the most part directed to the issues to be considered.

Lieberman testified as follows. He was admitted to practice in 1978 and was associated with Louis Hoffman, who was Moreland's lead counsel. Lieberman had considerable experience in criminal defense although this was his first capital case. (He was appointed to represent Moreland November 18, 1985). Explaining to clients the procedures involved with jury waivers was part of Lieberman's standard operating procedure. He met the state supreme court standards for co-counsel in capital cases and was familiar with the current death penalty statutes, including the provisions for a separate penalty phase, for a jury recommendation of death or of an alternative sentence, and for the trial judge to either impose a jury recommended death sentence or reject the recommendation in favor of an alternative sentence. Lieberman also knew that in a jury waived case, a three-judge panel would determine punishment. Although Lieberman could not recall precisely what he told Moreland, he testified that he believed he would have explained "the entire procedure" to Moreland, and that their discussions about jury waiver occurred over a period of "probably days, if not weeks."

. . .

We believe Moreland mischaracterizes Lieberman's testimony as merely irrelevant habit and routine testimony. Lieberman did not testify that he did not recall advising Moreland about the two-tiered sentencing process that he gave up by waiving a jury. Rather, Lieberman testified that he could not recall precisely what he said to Moreland but that he was personally familiar with the two-tiered sentencing procedure, and that he believed he would have explained the entire procedure to Moreland. From our review of the evidence, we conclude that the trial court could have reasonably concluded that Lieberman

explained to Moreland, and that Moreland understood, the two-tiered sentencing process that he would give up by waiving a jury. In any event, taking into account that Moreland's testimony barely touched upon the first issue on remand-and was expressly disbelieved in large part by the trial court-the trial court reasonably determined that Moreland did not carry his burden to prove he was unaware of the two-tiered sentencing procedure.

We also believe that Lieberman's testimony supports the trial court's gratuitous determination of the second issue on remand, i.e., that Moreland failed to carry his burden to prove that assuming he was unaware of the two-tiered sentencing-had he known, he would not have waived a jury trial. Lieberman testified that he and Hoffman-given the gruesome evidence of the five murders Moreland was accused of-believed the best strategy for avoiding the death penalty was trial before an "acceptable," presumably dispassionate, panel of judges rather than trial to a jury. Lieberman testified that Moreland bought into this strategy. Having credited this testimony and largely rejected Moreland's testimony, the trial court properly concluded that Moreland had failed to carry his burden of proof on the second remanded issue.

. . .

Finally, we believe the trial court acted within its discretion in rejecting the inference Moreland suggests that defense counsel were so intent upon trying the case to a panel that they neglected to advise him of the two-tier sentencing process.

*Moreland,* 2004 WL 2436589 at *1–4.

The governing standard for effective assistance of counsel is found in *Strickland*

*v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that the counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. 2052.

As to the second prong, the Supreme Court said:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Id.* at 694, 104 S.Ct. 2052; see also, *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir.1998).

In *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), the Court recognized that the American Bar Association's (ABA) Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases provide the guiding rules and standards to be used in defining the prevailing professional norms for purposes of ineffective assistance of counsel claims. The 1989 Guidelines adopted as "prevailing norms" in *Wiggins* merely represent

> ... [A] codification of longstanding, common-sense principles of representation understood by diligent, competent counsel in death penalty cases. The ABA standards are not aspirational in the sense that they represent norms newly discovered after *Strickland.* They are the same type of longstanding norms referred to in *Strickland* in 1984 as "prevailing professional norms" as "guided" by "American Bar Association standards and the like." ... The Court in *Wiggins* clearly holds ... that it is not making "new law" on the ineffective assistance of counsel either in *Wiggins* or in the earlier case on which it relied for its standards, *Williams v. Taylor,* 529 U.S. 362[, 120 S.Ct. 1495, 146 L.Ed.2d 389] ... (2000).

*Hamblin v. Mitchell,* 354 F.3d 482, 486 (6th Cir.2003), *cert. denied,* 543 U.S. 925, 125 S.Ct. 344, 160 L.Ed.2d 223 (2004).

Mr. Moreland has failed to satisfy the first prong of the *Strickland* test. First, the evidence reviewed above in the Court's discussion of Mr. Moreland's First Ground for relief, specifically, his trial counsel Mr. Lieberman's testimony at both the Post–Conviction Hearing and the Habeas Hearing, simply does not support Mr. Moreland's claim that counsel failed to advise him of the differences between being tried by a three-judge panel as opposed to a jury. As noted above, Mr. Lieberman testified that counsel discussed with Mr. Moreland over a period of weeks the issue of trial by a three-judge panel versus trial by a jury. Indeed, while it was Mr. Lieberman's first capital case, he had several years experience as a litigator and had numerous opportunities to develop a "usual practice" of advising clients about jury trials versus bench trials. It was not unreasonable, then, for the state courts to determine that based on Mr. Lieberman's testimony as to his experience and usual practices, he discussed with Mr. Moreland the issue of a three-judge panel and a jury.

Second, even assuming that Mr. Moreland's counsel did not specifically address with him that waiving his right to a jury would reduce the sentencing phase of his trial from a two-step process whereby a judge and jury must determine that death is appropriate to a one-step process where the panel could impose the death sentence, there is no authority for the proposition that to do so would necessarily result in ineffective assistance of counsel under *Strickland.* See *Haliym,* 492 F.3d at 699(citations omitted).

Third, in view of the evidence introduced at both the Post–Conviction Hearing and the Habeas Hearing this Court cannot say that Mr. Moreland's counsel's advice to waive a jury, even in the absence of ex-

plaining to him that such a waiver would result in a one-tiered penalty phase as opposed to a two-tiered phase allowed if a jury heard the case, was not sound trial strategy. The case involved the killing of five family members, two of whom were women and three of whom were children. The demonstrative evidence included crime scene photos as well as autopsy photos and the trial testimony included an eyewitness. It was not unreasonable for Mr. Moreland's counsel to advise him that a panel of three judges would be less likely to be emotionally affected by the gruesome evidence.

Finally, even assuming that Mr. Moreland had satisfied the first prong of *Strickland,* he has failed to satisfy the second prong. There simply is no evidence, or even suggestion, as to how the results of Mr. Moreland's trial, and specifically his sentence, would have been different had he not waived his jury trial right. In view of the evidence of Mr. Moreland's guilt, the emotional nature of the killings, particularly since the victims were women and children, and the nature of the demonstrative evidence, this Court cannot say that a reasonable jury would have been less likely to find Mr. Moreland guilty or less likely to recommend a sentence of death.

Mr. Moreland's Second Ground for Relief in not well taken and should be overruled.

### *Third Ground for Relief*

**Samuel Moreland's right to effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated during the penalty [sic] phase of Mr. Moreland's trial.[3]**

**3.** Although in his description of his Third Ground for Relief Mr. Moreland refers to the "penalty phase" of his trial, the body of his argument makes it clear that he is referring to the "guilt phase".

In his Third Ground for Relief, Mr. Moreland argues that his trial counsel were constitutionally ineffective in the guilt phase of his trial because they failed to:

1) secure a firearms expert to contest prosecution witness Shaffer's opinions regarding the murder weapon;

2) obtain an expert on blood analysis to challenge criminalist Laura Kiddon's analysis of blood;

3) file a motion to suppress the statements Mr. Moreland made after his arrest which were introduced in the State's case-in-chief;

4) object to 39 gruesome photographs offered by the prosecution and to contest the repetitive, cumulative and inflammatory nature of the photographs; and

5) object to the prosecution's attempts to use his reliance on his *Miranda* rights as evidence of his guilt.

On direct appeal to the Ohio appellate court, Mr. Moreland raised subclaims 4 and 5 not as discrete ineffective assistance of counsel claims, but rather as claims of trial court error. Appendix, Vol. 2 at 135–232. However, on direct appeal to the Ohio Supreme Court, Mr. Moreland did raise subclaims 4 and 5 as ineffective assistance of counsel claims as well as trial court error claims. *Id.*, Vol. 3 at 46–167; *Moreland*, 50 Ohio St.3d at 69, 552 N.E.2d 894. Because the post-conviction appeals court rejected Mr. Moreland's gruesome photographs and *Miranda* ineffective assistance of counsel claims on the basis of *res judicata*, see *infra*, the Ohio Supreme Court's decision is the last state court decision addressing those claims on the merits and therefore, that is the decision which this Court looks to for purposes of habeas review. *Bouchard*, 405 F.3d at 469.

In rejecting Mr. Moreland's claims of ineffective assistance of counsel based on failure to object to the admission of certain allegedly gruesome photographs and the admission of Mr. Moreland's reliance on his *Miranda* rights, the Ohio Supreme Court said:

Appellant, in his twelfth proposition of law, argues that he was denied effective assistance of counsel at trial and on appeal. Therefore, appellant urges reversal of his convictions and sentence.

In *Strickland v. Washington* (1984) 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, the United States Supreme Court stated:

"a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First, the defendant must show that counsel's performance was deficient.* This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Second, the defendant must show that the deficient performance prejudiced the defense.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (Emphasis added.)

As to the required showing of "prejudice," the court went on to state that " * * * [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to under-

mine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Assuming *arguendo* that appellant has proved a deficiency in counsel's performance, appellant has failed to establish that he was prejudiced by the deficiency. We have reviewed each and every alleged error. Pursuant to our review, we have found no prejudicial error which in any way undermines the integrity of appellant's convictions and sentence.

*Moreland,* 50 Ohio St.3d at 69, 552 N.E.2d 894.

This Court reviewed the governing standard for a claim of ineffective assistance of counsel in its discussion and analysis of Mr. Moreland's Second Ground for Relief, *supra.* That review is equally applicable to Mr. Moreland's Third Ground for Relief and it is incorporated herein.

As to subclaims 4 and 5, this Court notes that Mr. Moreland was tried before a three-judge panel.

 In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. *Smith v. Mitchell,* 348 F.3d 177, 206 (6th Cir.2003), *citing Harris v. Rivera,* 454 U.S. 339, 346, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). In a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice. *Smith, supra, citing United States v. Joseph,* 781 F.2d 549, 552–53 (6th Cir.1986). A three-judge panel would not likely be misled by any improper evidence. *Smith, supra, citing Wickline v. Mitchell,* 319 F.3d 813, 823–24 (6th Cir.2003).

Even assuming that Mr. Moreland has shown that his counsel were ineffective by failing to object to the introduction of allegedly gruesome photographs and by failing to object to the prosecution's attempts to use his reliance on his *Miranda* rights as evidence, Mr. Moreland has failed to identify how any such errors prejudiced him. This is particularly true in view of the fact that Mr. Moreland was tried by a three-judge panel as opposed to a jury. In addition to the presumption that a three-judge panel is likely to ignore inadmissible evidence, there was substantial evidence of Mr. Moreland's guilt introduced at the trial, including the testimony of an eye witness.[4] Therefore, even if it was error to admit any allegedly gruesome photographs and evidence of Mr. Moreland's reliance on his *Miranda* rights into evidence, there was sufficient evidence upon which a guilty verdict could rest. Indeed, Mr. Moreland does not suggest any way in which the results of his trial would have been different "but for" any alleged erroneously admitted evidence.

The Ohio Supreme Court's decision rejecting Mr. Moreland's gruesome photographs and *Miranda* claims was not contrary to or an unreasonable application of federal law. Therefore, Mr. Moreland's subclaims 4 and 5 fail.

The Court turns to subclaims 1, 2, and 3 contained in Mr. Moreland's Third Ground for Relief. As noted above, Mr. Moreland raised those ineffective assistance of counsel claims in post-conviction and the post-conviction court of appeals addressed those claims on the merits. The court rejected those claims saying:

The seventeenth claim is one for ineffective assistance of counsel. Specifically, Moreland cites the following omissions as grounds for this claim-trial counsel failed to (1) obtain a firearms expert and a "blood expert" to contest the State's witnesses; (2) submit evidence in support of the motion for change of venue; (3) file a motion to suppress admissions

---

**4.** For a more in-depth discussion of the evidence against Mr. Moreland, see the Court's analysis of Mr. Moreland's Fifth Ground for Relief, *infra.*

made by, and items taken from, Moreland after his arrest; (4) file a motion challenging the improper denial of bond; (5) file a motion challenging "the improper grand jury procedure"; (6) make certain that Moreland was aware of all the consequences of waiving a jury trial; (7) ensure that a complete record of all proceedings was maintained; (8) object to more than five of the photographs admitted at trial; (9) object to the testimony of the State's expert regarding electrophoresis; (10) object to repeated attempts to use Moreland's reliance on his *Miranda* rights as evidence of his guilt.

In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court set the standard for determining whether a defendant has been provided with ineffective assistance of counsel. This standard, subsequently followed in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, requires that a defendant satisfy a two-part test. First, the defendant must demonstrate that his counsel's representation was deficient by showing that counsel's performance fell below an objective standard of reasonable representation, *Id.*, at 142, 538 N.E.2d 373. Second, the defendant must prove that his trial counsel's deficient representation resulted in prejudice to the defendant. *Id.* To prove prejudice, the defendant must show "reasonable probability that, were it not for counsel's unprofessional efforts, the result of the trial would have been different." *Id.*

The United States Supreme Court has stated that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland, supra,* at 689, 104 S.Ct. 2052. This Court has stated that under Ohio law, a properly licensed attorney is presumed competent. *State v. Estes,* (May 31, 1996), Montgomery County App. No 15419, 1996 WL 283937, following *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301, 209 N.E.2d 164. Further, we have held that "counsel's performance will not be deemed ineffective unless and until" the defendant has met the requirements of *Strickland* and *Bradley. Estes,* at *3.

The argument that trial counsel was ineffective for failing to file a motion to suppress, failing to file a motion regarding bond, failing to object to photographs, failing to object to testimony regarding electrophoresis and Moreland's reliance on his *Miranda* rights are all apparent from the record. Since these claims do not depend upon evidence *dehors* the record, they were capable of being raised on direct appeal, and thus were properly rejected.

We next turn to the issue of the failure to present experts. This court has previously held that a claim of ineffective assistance of counsel based upon the failure to present expert testimony is a matter "which must be determined *dehors* the record." *State v. McDaniel* (Oct. 24, 1997), Miami App. No. 97–CA–7, 1997 WL 691508, unreported. When [in] "post-conviction relief petitioner alleges ineffective assistance of counsel through affidavits naming uncalled witnesses whose testimony may have demonstrated evidence significant to the defendant, an evidentiary hearing should be held." *State v. Aeh* (Dec. 11, 1997), Franklin No. 97APA05–601, 1997 WL 771044, unreported. We have reversed a summary judgment in a post-conviction relief action when the petitioner presented affidavits of experts who provided averments that, if provided at trial, may have had a bearing on the outcome of the trial. See, *State v. Chinn,*

(Aug. 21, 1998), Montgomery App. No. 16764, 2000 WL 1458784, unreported. In this case, Moreland has failed to present affidavits indicating that defense counsel could have found experts or that they would have contradicted, or even cast doubt upon, the testimony of the State's experts. Without more, we cannot say that Moreland's assertions demonstrate ineffective assistance of counsel in regard to the lack of expert witnesses. This claim was correctly rejected.

*Moreland,* 2000 WL 5933 at *6–7.

■ In subclaims 1 and 2, Mr. Moreland alleges that his counsel were constitutionally infirm because they failed to secure a firearms expert to contest the state's firearm exert's (Gary Shaffer), testimony regarding the murder weapon and a blood analysis expert to challenge the state's criminalist's (Lisa Kiddon) testimony about blood analysis.

Even if Mr. Moreland has satisfied the first *Strickland* prong, which is doubtful at best, he has utterly failed to satisfy the second, or "prejudice", prong of *Strickland.* Specifically, although Mr. Moreland has essentially presented a "laundry list" of possibilities as to what any potential experts, if called on his behalf, may have testified about, he has not come forth with any proof of any such information or potential testimony. Indeed, at no time during either the state or present proceedings has Mr. Moreland come forward with any proof, such as affidavits, indicating that his counsel could have found such experts, that any such experts' testimony would have benefitted Mr. Moreland, or that any such testimony would have at least cast doubt on either Mr. Shaffer's or Ms. Kid-

don's testimony. His failure to do so is fatal to any attempt to establish that "but for counsel's alleged deficiencies", the results of the proceedings would have been different. Subclaims 1 and 2 are not well-taken.

■ The Court turns to subclaim 3 of Mr. Moreland's Third Ground for Relief, his "failure to file a motion to suppress" claim. As noted above, in rejecting Mr. Moreland's claim that his counsel were ineffective for failure to file a motion to suppress admissions made by him, and items taken from him after his arrest, the post-conviction appellate court determined that the claim "[did] not depend upon evidence *dehors* the record, were capable of being raised on direct appeal, and were thus properly rejected." [5]

■ As a general matter, a defendant who is convicted in Ohio of a criminal offense has available to him more than one method of challenging that conviction. *Stojetz v. Ishee,* 389 F.Supp.2d 858 (S.D.Ohio 2005). Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata. Id.* at 882–82, citing *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Issues that must be raised in a post-conviction action pursuant to Ohio Rev.Code § 2953.21 include claims that do not appear on the fact of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *Stojetz, supra, citing, State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982).

---

**5.** Although the post-conviction appeals court also determined that Mr. Moreland's gruesome photographs and *Miranda* claims were "capable of being raised on direct appeal and thus properly rejected", as noted in this Court's analysis of subclaims 4 and 5, Mr.

Moreland did raise those claims as ineffective assistance of counsel claims on direct appeal in the Ohio Supreme Court. As also noted, the Ohio Supreme Court properly rejected the claim.

Mr. Moreland was represented on appeal by different counsel than counsel who represented him at trial. *See, e.g.,* Appendix, Vol. 1 at 1, 32, 33, 284; *Id.,* Vol. 2 at 13. Therefore, pursuant to Ohio's post-conviction statute, he was required to raise his "motion to suppress" claim on direct appeal. He failed to do so.

■ Federal habeas is relief is available only after the petitioner has exhausted the claim in state courts. 28 U.S.C. §§ 2254(b)(1), (c). In the interest of comity, a state court is compelled to enforce federal law. Thus, in instances where a petitioner alleges that his or her sentence from a state court violates federal law, the state courts should be provided a full and fair opportunity to adjudicate the federal claim and provide relief. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). When a petitioner has deprived the state courts of an opportunity to resolve a federal constitutional claim prior to bringing such claim before the federal courts, and the claim cannot now be brought before the state courts, the claim is procedurally defaulted. *Id.* The petitioner is ineligible for federal habeas relief on this claim unless cause and prejudice or a miscarriage of justice can be shown. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

The post-conviction trial court rejected many of Mr. Moreland's claims, including the "motion to suppress" claim contained now in subclaim 3 on the "principle that claims which were or could have been raised at trial or on direct appeal are not claims which may be raised in post-conviction proceedings." *State v. Moreland,* No. 85–CR–2177 (Montgomery Court of Common Pleas Jan. 12, 1998); Appendix, Vol. 6 at 366. Stated differently, the court relied on the doctrine of *res judicata* in rejecting those claims. *See, Id.* The post-conviction appellate court agreed.

■ Determination of whether a state procedural ground is adequate and independent is a federal question that the federal court itself must decide. *Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Abie State Bank v. Weaver,* 282 U.S. 765, 773, 51 S.Ct. 252, 75 L.Ed. 690 (1931).

■ State procedural rules bar federal habeas corpus review only if the rules are "firmly established and regularly followed." *Rogers v. Howes,* 144 F.3d 990 (6th Cir.1998); *Jones v. Toombs,* 125 F.3d 945, 946–47 (6th Cir.1997); *James v. Kentucky,* 466 U.S. 341, 348–49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984); *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); *Barr v. City of Columbia,* 378 U.S. 146, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964). A procedural rule need not be followed in every case; it is sufficient if it is applied in the vast majority of cases. *Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir.2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001) citing *Dugger v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). "[A]n occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." *Coleman v. Mitchell,* 268 F.3d 417, 429 (6th Cir.2001), quoting *Amos v. Scott,* 61 F.3d 333, 342 (5th Cir. 1995).

The *res judicata* rule has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *Mason v. Mitchell,* 320 F.3d 604, 628 (6th Cir. 2003); *Coleman,* 268 F.3d at 429; *Buell v. Mitchell,* 274 F.3d 337 (6th Cir.2001); *Byrd,* 209 F.3d at 521–22; *Rust,* 17 F.3d at 160–61; *Van Hook v. Anderson,* 127 F.Supp.2d 899 (S.D.Ohio 2001).

Mr. Moreland's ineffective assistance of trial counsel claims contained in subclaim 3, the "motion to suppress" claim, is proce-

durally defaulted. Mr. Moreland does not present any cause for the default or prejudice which results.

For the foregoing reasons, Mr. Moreland's Third Ground for Relief should be rejected.

### Fourth Ground for Relief

**Samuel Moreland's right to effective assistance of counsel under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated during the mitigation phase of Mr. Moreland's trial.**

In his Fourth Ground for Relief, Mr. Moreland essentially raises four subclaims with respect to alleged ineffective assistance of counsel during the mitigation phase. He alleges that his trial counsel were ineffective because they failed to: (1) retain a social worker; (2) interview some family members; (3) collect his high school records and medical records; and (4) research his background and the effects on him of inner-city culture.

Mr. Moreland failed to raise any of these claims on direct appeal. *Moreland,* 50 Ohio St.3d 58, 552 N.E.2d 894; Appendix, Vol. 3 p. 46–167 (Brief of Appellant). In addition, Mr. Moreland never raised subclaim 3 on either direct appeal or in post-conviction. It is therefore procedurally defaulted.

Mr. Moreland did raise subclaims 1, 2, and 4, in the post-conviction proceedings and the state appellate court addressed them on the merits. *Moreland,* 2000 WL 5933; Appendix, Vol. 8 at 184–211. The Ohio Supreme Court implicitly adopted the appellate court's findings and conclusions when, following the appeals court's remand for a hearing on the jury waiver issue, it ultimately declined to accept jurisdiction of the appeal. *Moreland,* 105 Ohio St.3d 1452, 823 N.E.2d 457; Appendix, Vol. 13 at 62.

In rejecting Mr. Moreland's mitigation phase ineffective assistance of counsel claims, the appellate court said:

In the twenty-seventh claim, Moreland again argued that he was entitled to have an expert appointed for the purpose of explaining his cultural background and the effect it had on his development. This claim is also raised as an ineffective assistance of counsel argument in the thirty-eighth claim. Moreland presented an affidavit of a social worker who opined that Moreland's development in an "inner city culture" needed to be presented to the panel and that the failure to do so affected his trial.

Our review of the social worker's affidavit indicates that he would have testified that Moreland's upbringing in an inner city environment helped to shape his development and that Moreland was "locked into the culture totally." The affidavit also indicates that Moreland's background made him into a "maximum underachiever" who maintained his own level of integrity and ethics. Moreland claims that this information would have helped him in the guilt/innocence phase of trial by "explaining his complex relationship to the [victims]." Moreland also contends the evidence would have been of help in the mitigation phase by providing him with evidence of the R.C. 2929.04(B)(2) ["strong provocation"] and (B)(7) [catchall] mitigating factors.

. . .

Furthermore, it is clear from the record that trial counsel's strategy during the mitigation phase was to emphasize that Moreland's chronic alcoholism caused him to lack the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law [R.C. 2929.04(B)(3)]. In their affidavit, trial counsel specifical-

ly averred that they believed this to be the strongest mitigating factor, and that they emphasized it. However, they also stated that they did raise the (B)(2) and (B)(7) factors, but did not emphasize them because they believed them to be weaker arguments. We cannot say that the emphasis of one trial strategy over another rises to the level of ineffective assistance of counsel. Therefore, this claim was properly rejected.

The twenty-eighth claim argued that Moreland's conviction is void because a social worker was not appointed to assist trial counsel as a "litigation specialist." This was also raised in the thirty-eighth claim as an ineffective assistance of counsel issue. Moreland presented the affidavit of a social worker who averred that she would have been able to assist in the preparation of mitigation evidence. She also averred that she had "training and experience in identifying environmental and biological factors that affect the development of individuals." Our review of the affidavit reveals that the social worker did not identify any discovery or evidentiary issue that she would be more capable of researching than would a certified death penalty attorney. Furthermore, the affidavit merely indicates that the social worker would have assisted counsel in preparing for trial; something that counsel is presumed capable of doing on their own. Therefore, we find this claim properly rejected.

. . .

The thirty-eighth request for relief argued that the conviction was void because Moreland was denied the effective assistance of counsel at the mitigation phase of trial. Specifically, he claimed that counsel failed to do the following: (1) interview all family members, friends and significant people in Moreland's life; [and] (2) develop Moreland's "psychosocial background". . . . We find that all of

these claims, except the failure to interview potential witnesses, were apparent from the record and could have been raised on direct appeal, and are therefore barred. In reviewing the claim that counsel failed to interview family members, friends, and significant other persons, we noted that the only two people who presented affidavits in which they claimed they were not interviewed were Moreland's father and his maternal aunt. FN 3—Trial counsel's affidavit specifically states that Moreland's father was interviewed.

Moreland's father's affidavit basically recited facts regarding the history that Moreland's mother was a violent alcoholic, while the aunt's [affidavit] stated that the mother was an alcoholic. Moreland's father testified during the mitigation phase of the trial. His testimony, while not as detailed as his affidavit, essentially established the fact of the mother's violence and alcoholism. While the aunt did not testify, the averments contained in her affidavit were covered by the father's testimony. Therefore, we conclude that the failure to interview the aunt did not prejudice Moreland. Furthermore, even if counsel failed to interview Moreland's father, his testimony at trial established the salient facts contained in his affidavit. Therefore, we find that this claim was properly denied.

*Moreland,* 2000 WL 5933 at *10–11, 13.

Again, assuming *arguendo* that Mr. Moreland is able to meet the first *Strickland* prong, he has failed to satisfy the second prong.

 First, Mr. Moreland has made no specific argument with respect to subclaim 2. Indeed, in this habeas action, Mr. Moreland has failed to even identify the family members counsel failed to interview. On this basis, subclaim 2 fails.

■ Next, Mr. Moreland argues generally that the social and economic underpinnings relating to his emotional development and stability were not pursued and not adequately presented to the panel. As to subclaim 1, the claim with respect to a social worker, Mr. Moreland suggests that there is a reasonable probability that if defense counsel had employed a social worker to assist them in preparing for mitigation, the panel's decision imposing the death penalty "would have been difficult." With respect to subclaim 4, Mr. Moreland's position is that a cultural expert on the inner city "could have explained" the effect the inner city culture had on Mr. Moreland's development and that presentation of this evidence "could have been considered" by the trier of fact.

While Mr. Moreland describes the potential testimony that a social worker and a cultural expert may have provided, his argument that the trier of fact, in this case the panel, "could have" considered that information does not meet the high standard of "reasonable probability" which *Strickland* requires. In any event, even if confronted with such testimony, it is unlikely that the panel would have found that those alleged mitigation factors had outweighed the aggravating circumstances which the panel identified. Specifically, the panel determined that the killings were purposeful and committed with prior calculation and design. Appendix, Vol. 1 at 278–81. In addition, the panel found that the wounds and blunt force trauma sustained by all of the victims were "shocking", and that Mr. Moreland not only shot several of the victims, he also "brutally and intentionally" followed a course of conduct whereby he actually crushed the skulls of several of his victims, some of whom were children under seven years of age. *Id.* Mr. Moreland failed to cast doubt on the outcome of his conviction and sentence and the state court did not err in rejecting the claims Mr. Moreland now raises in his Fourth Ground for Relief.

Mr. Moreland's Fourth Ground for Relief should be denied.

### Fifth Ground for Relief

**Samuel Moreland's right to due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated because his convictions for Aggravated Murder with a prior calculation and design rests upon insufficient evidence.**

■ In support of this Ground, Mr. Moreland argues that there was insufficient evidence of specific intent to kill and, therefore, he is factually innocent of aggravated murder and therefore his conviction and death sentence are Constitutionally infirm.

Mr. Moreland raised this claim on direct appeal before the Ohio Supreme Court as his Eighth Proposition of Law. In rejecting Mr. Moreland's insufficiency-of-the-evidence claim, the Ohio Supreme Court said:

Appellant, in his eighth proposition of law, alleges that the evidence at his trial was insufficient to show that the murders were committed with prior calculation and design because of his voluntary intoxication. We reject appellant's contentions. In *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190 paragraph three of the syllabus, we held that:

"here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

In the case at bar, appellant, after arguing with Glenna Green, left the house for a period of about ten minutes. The evidence was sufficient to show that appellant then returned with a rifle, stood in front of Glenna Green and shot her to death, shot and beat Dayron Talbott, reloaded the weapon, and then killed or attempted to kill all the people in the household. Appellant also had left the house previously for a period of approximately one-half hour. We conclude, as did the trier of fact, that there existed sufficient time and opportunity for the planning of appellant's acts. Additionally, we find evidence that the circumstances of appellant's killing or attempting to kill all the witnesses in the household showed a scheme to implement the calculated decision to kill which, according to *Cotton,* justified the finding of prior calculation and design. Evidence produced by appellant of his intoxication was through an expert witness who estimated that appellant, around the time the murders were committed, had a blood-alcohol level of between .30 and .36, meaning that appellant would have been in a stupor. The expert's estimation accounted for the consumption of some alcoholic beverages after the time of the murders. However, the evidence of appellant's intoxication conflicted with evidence brought out by appellee. Bruce Shackleford, who observed appellant around the time of the murders, testified on cross-examination that appellant did not appear to be drunk or have difficulty walking or talking. Thomas testified that he and appellant drank intoxicating beverages *after* the murders. Finally, the testimony of Dayron Talbott regarding appellant's act of reloading the rifle after Glenna Green's murder shows some degree of functional ability on appellant's part.

The question of whether or not appellant acted with prior calculation and design is an issue of fact. Based upon the facts in the case *sub judice,* we find evidence sufficient to warrant the conclusions reached by the panel that weighed the evidence and determined the credibility of the witnesses. Apparently, the panel concluded that appellant's intoxication (if he was intoxicated at all) did not negate the finding of prior calculation and design.

*Moreland,* 50 Ohio St.3d at 66–67, 552 N.E.2d 894 (emphasis in original).

▇▇▇▇ An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir.2000). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship,* 397 U.S. at 364, 90 S.Ct. 1068.

In *Jackson, supra,* the Court discussed the standard applicable to a federal court's review of a state conviction on a sufficiency-of-the-evidence claim in some detail:

In *Winship,* the Court held for the first time that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." ... The standard of proof beyond a reasonable doubt, said the Court, "plays a vital role in the American scheme of criminal procedure," because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and

to reduce the risk of factual error in a criminal proceeding. 397 U.S. at 363, 90 S.Ct. 1068.... At the same time by impressing upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Id.* at 372, 90 S.Ct. 1068 ... (Harlan, J., concurring).

...

The *Winship* doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A "reasonable doubt", at a minimum is one based on "reason". Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction. Under *Winship* ..., it follow that when such a conviction occurs in a state trial, it cannot constitutionally stand.

A federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court.

...

After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether, *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Jackson,* 443 U.S. at 315–19, 99 S.Ct. 2781 (citations and footnotes omitted) (emphasis in original).

Under the standard announced in *Jackson,* therefore, it is not the reviewing court's duty to rule out every hypothesis that might be conjured from the facts other than the petitioner's guilt. *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. Instead, where the evidence supports conflicting inferences, the court must presume the fact finder resolved such conflicts against the petitioner and must defer to that resolution. *Id.* Moreover, circumstantial evidence may be sufficient to support a conviction. *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984). It is well established that the trier of fact at the state court level bears primary responsibility to choose which testimony or evidence to believe, and that a credibility determination by a state court is entitled to a presumption of correctness so long as the determination is fairly supported by the record. *Walker v. Engle,* 703 F.2d 959, 969–70 (6th Cir.), *cert. denied sub nom Marshall v. Walker,* 464 U.S. 951, 104 S.Ct. 367, 78 L.Ed.2d 327 (1983); *Scott v. Perini,* 662 F.2d 428, 435 (6th Cir.1981).

■ There is a tension inherent in sufficiency-of-the-evidence claims where the underlying conviction is a violation of state law. As noted above, generally, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. *See Estelle,* 502 U.S. 62, 112 S.Ct. 475. However, a habeas claim for sufficiency-of-the-evidence does not require a federal court to review of correctness of state law, but instead, to review the evidence to insure that the due process guarantees of the Fourteenth Amendment have not been abridged by a state law conviction. *See Jackson, supra.* Thus, while the Supreme Court has instructed the habeas court to conduct its habeas review with explicit reference to the substantive elements of the criminal offense as defined by state law, the habeas court's role is not to re-analyze the state court's interpretation of state law. *Id.* Rather, the habeas court's review is limited to determining whether the state court decision was an unreasonable application of federal law, not simply an incorrect application of federal law. *Taylor,* 529 U.S. at 409, 120 S.Ct. 1495.

The thrust of Mr. Moreland's argument in support of his Claim Five is that there was insufficient evidence of prior calculation and design to support a conviction of aggravated murder under Ohio Revised Code § 2903.01(A).

Section 2903.01(A) states: "No person shall purposely, and with prior calculation and design, cause the death of another." *Id.* The Ohio Revised Code distinguishes between aggravated murder and murder, which is to "purposely cause the death of another." *Taylor v. Mitchell,* 296 F.Supp.2d 784, 819 (N.D.Ohio 2003), citing Ohio Revised Code § 2903.02(A). Only the element of prior calculation and design distinguishes the two provisions, with each requiring that the homicide occur purposely. *Taylor, supra.*

The apparent intention of the General Assembly in employing the phrase "prior calculation and design" was to require *more than the few moments of deliberation* permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill. Thus, *instantaneous deliberation is not sufficient* to constitute "prior calculation and design."

*Id.,* citing *State v. Cotton,* 56 Ohio St.2d 8, 381 N.E.2d 190 (1978) (emphasis in original).

Prior calculation and design sets up a more demanding standard than the old first degree murder standard of "deliberate and premeditated malice." Prior calculation and design requires the accused to have killed purposefully *after devising a plan* or scheme to kill. There must be some kind of studied analysis with its object being the means by which to kill. The kind of *momentary deliberation or instantaneous premeditation* that was the accepted standard under the old statute ..., *is not longer sufficient or acceptable.*

*Taylor,* 296 F.Supp.2d at 821, citing *State v. Jenkins,* 48 Ohio App.2d 99, 101–02, 355 N.E.2d 825 (8th Dist.1976) and *State v. Robbins,* 58 Ohio St.2d 74, 388 N.E.2d 755 (1979) (emphasis in original).

■ There is no "bright-line test" that emphatically distinguishes between the presence or absence of "prior calculation and design". *Taylor, supra.*(citation omitted). However, "prior calculation and design" is a more stringent element than the "deliberate and premeditated malice" required under prior Ohio law. *Id.* Instantaneous deliberation is not sufficient. *Id.* "Prior calculation and design" requires a scheme designed to implement the calculated decision to kill. *Id.* citing *State v.*

*Coley,* 93 Ohio St.3d 253, 263, 754 N.E.2d 1129 (2001).

 Courts are to look to three primary factors when determining whether prior calculation and design exists in a particular case: (1) whether the victim and accused knew each other and, if so, whether their relationship was strained; (2) whether the accused chose the murder site or weapon before the murder; and (3) whether the killing was a drawn-out act or an eruption of events. *Taylor,* 296 F.Supp.2d at 820 (citations omitted).

Thurston Jones testified at Mr. Moreland's trial that he was Tia Talbott's boyfriend and lived at the South Ardmore address with Tia and her family. Trial Transcript, Vol. I at 87–99. Mr. Jones knew Mr. Moreland who also lived at the South Ardmore address. *Id.* Mr. Jones testified further that Mr. Moreland was Glenna Green's boyfriend and that they did not get along. *Id.*

Tia Talbott testified that Glenna Green was her mother, that Mr. Moreland had been her mother's boyfriend for close to three years at the time of the killings, and that he lived with the family at the South Ardmore home. *Id.* at 105–39. Ms. Talbott also testified that Mr. Moreland frequently drank and came home intoxicated and that when Mr. Moreland came home late, she would sit on the steps and listen to hear whether he and her mother would fight. *Id.*

Dayron Talbott testified that Glenna Green was his grandmother, that he shared an upstairs bedroom with her, and that Mr. Moreland lived there and also had a room upstairs. *Id.,* Vol. 2 at 524–64. Dayron testified further that when Mr. Moreland came home drunk, there usually would be arguments upstairs in the house. *Id.* Dayron also testified that on the night of the killings, when he went to bed, Mr. Moreland was upstairs, that at some point, he fell asleep and then woke up when his grandmother and Mr. Moreland, who were in the bedroom he shared with his grandmother, were arguing. *Id.* Dayron described the argument as about Mr. Moreland asking his grandmother for money for beer or wine and his grandmother refusing to give him money. *Id.*

Dayron also testified that Mr. Moreland left the bedroom a few times, that one of those times after his mother [Tia Talbott] who had come upstairs went back downstairs, Mr. Moreland left the room saying that he was leaving the house and that he came back into the room and again argued with his grandmother about money. *Id.* Dayron testified that the third time Mr. Moreland came back into the bedroom, he had a gun and that he pointed the gun at his (Dayron's) grandmother and shot her. *Id.* Dayron testified further that after Mr. Moreland shot his grandmother, Mr. Moreland then shot him twice, started laughing, and then started hitting him in the face with the gun. *Id.* Finally, Dayron testified that after using the gun, Mr. Moreland put a "long thing" through the barrel of the gun and pulled it out and then took a rag and wiped it off. *Id.*

First, the evidence shows that Mr. Moreland knew the victims; in fact, he lived in the same house with several of them. Additionally, Mr. Moreland had a "boyfriend-girlfriend" relationship with Glenna Green which was volatile and they argued frequently. Indeed, Mr. Moreland and Ms. Green argued several times the day of the killings. Further, two or three times, Mr. Moreland left the room where he and Ms. Green were arguing and came back again, the final time carrying the gun. Those absences from the bedroom provided him with ample opportunity to choose the murder weapon. Finally, after shooting Ms. Green, Mr. Moreland shot Dayron twice and took the time to clean the gun before leaving the room and killing the

victims who were in other parts of the house. The evidence supports the conclusion that the killings were not an "eruption of events" but rather drawn-out events.

Mr. Moreland argues that Dayron's testimony is "replete with inconsistencies and confusion". Even assuming that is an accurate description of Dayron's testimony, this Court does not sit as a trier of fact. Rather, it was the three-judge panel's function to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence and this Court must presume that the panel resolved those conflicts in favor of the prosecution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. Construing the evidence in the light most favorable to the prosecution, a rational trier of fact could find Mr. Moreland guilty of aggravated murder. Accordingly, his convictions for aggravated murder do not violate Mr. Moreland's due process rights under the United States Constitution.

The Ohio Supreme Court's rejection of Mr. Moreland's claim regarding insufficient evidence of specific intent to kill was not an unreasonable application of, nor contrary to, clearly-established federal law. Therefore, Mr. Moreland's Fifth Ground for Relief is not well taken and should be denied.

## Sixth and Seventh Grounds for Relief

Because the claims contained therein are similar and the analysis of those claims is the same, the Court will consider Mr. Moreland's Sixth and Seventh Grounds for relief together.

### Sixth Ground for Relief

**Samuel Moreland's right to a fair trial, due process and confrontation under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [sic] violated when the Trial Court failed to conduct a full and meaningful evidentiary hearing into the competency and ad-**

missibility of the child witness Daron [sic] Talbott's testimony.

### Seventh Ground for Relief:

**Samuel Moreland's right to a fair trial, due process and right of confrontation under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [sic] violated when the Trial Court excluded opinion testimony from a defense expert on the issue of Daron [sic] Talbott's susceptibility to suggestion and influence from others regarding his eyewitness identification.**

In support of his Sixth and Seventh Grounds for Relief, Mr. Moreland essentially argues that the trial court failed to conduct a meaningful evidentiary hearing into the competency of the child witness Dayron Talbott as well as the admissibility of his testimony, to allow a psychiatric examination of Dayron Talbott, and to admit opinion testimony as to the witness' ability to testify truthfully, his susceptibility to suggestion, and his social and psychological deprivation, all of which directly related to his competency to testify.

Mr. Moreland raised these claims in the Ohio Supreme Court on direct appeal as his First Proposition of Law. The court rejected Mr. Moreland's claim stating:

Dayron Talbott was the state's only eyewitness to the crimes committed on November 1, 1985. Prior to Dayron's testifying, defense counsel requested, and was denied, an opportunity to inquire of the witness and the opportunity to present other witnesses concerning the ability of Dayron to testify truthfully.

Additionally, appellant moved for an independent psychiatric examination of Dayron to assist the panel in its competency determination. This motion was also denied.

The panel then conducted a short interview with Dayron. This interview took place in chambers and appellant and all counsel were present. The panel concluded that Dayron was competent to testify.

Appellant, in his first proposition of law, contends that since Dayron was subject to repeated pretrial questioning by the police and the prosecution, Dayron was rendered incompetent to testify. Further, appellant cites to portions of the record to suggest that Dayron was subjected to "[i]mproper influences" by family members. Finally, appellant relies on the fact that Dayron made inconsistent statements in support of the argument that "[i]mproper influences" came to bear on Dayron's ability to accurately receive just impressions of the facts, or to relate those facts truthfully. According to appellant, the evidence he sought to present at a competency hearing related to Dayron's competency as a witness and, thus, to the admissibility of Dayron's testimony. Hence, reasons appellant, a full evidentiary hearing on Dayron's competency should have been held and an independent mental examination of Dayron should have been allowed. Appellant argues that the failure to conduct the hearing and allow the mental examination requires a reversal of his capital convictions.

We do not agree. Evid.R. 601 provides in relevant part:

"every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * * [.]"

Judge Kessler, a member of the three-judge panel which tried appellant, responded to appellant's contentions regarding the requested competency hearing as follows:

"[W]ell, the Court feels that under the Rules of Evidence, specifically Rule 601 * * * that every person is competent to be a witness except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions from facts.

"[H]ere we have a child who was in fact eleven years old when the events occurred and will soon be twelve. He appeared to me to be alert, bright, intelligent. The other matters that you bring in we feel do not go to competency but would go to the *credibility.* * * * *" (Emphasis added.)

We find, as did the court of appeals, that the panel did not abuse its discretion in denying appellant's motion for a competency hearing. Absent a finding that the panel abused its discretion and that the appellant was materially prejudiced thereby, this court should be slow to interfere with the panel's determination. See *State v. Hymore* (1967) 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968) 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. "[T]he term '[a]buse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *." (Citations omitted.) *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

In the case at bar, the trial court did conduct an interview with Dayron which showed that Dayron could distinguish between truth and falsity. However, the trial court did not fully inquire into whether Dayron could accurately relate facts. We do not see how this failure rises to the level of an abuse of discretion particularly where, as here, the wit-

ness is presumed to be competent and, hence, the court was not required to interview the witness at all. Further, all the evidence that appellant wishes to introduce in a competency hearing relates to whether Dayron Talbott is to be believed. Therefore, appellant's evidence goes to the *credibility* of Dayron as a witness rather than to the *admissibility* of Dayron's testimony.

As to the requested psychiatric examination of Dayron, we have stated that the matters appellant wishes to introduce in the competency hearing were actually matters relating to Dayron's *credibility* as a witness and not matters concerning Dayron's competency to testify.

Appellant also seeks a reversal of his convictions, in his fifth proposition of law, based upon the panel's refusal to admit opinion testimony of an expert witness on the issue of Dayron's susceptibility to suggestion and influence. While the panel did allow appellant to attack Dayron's credibility, appellant was not allowed to attack Dayron's credibility by way of expert testimony.

In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, syllabus, we held: "[A]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."

*Boston* stands for the proposition that expert testimony cannot be used to show that a child is telling the *truth* or that the child accurately testified. We came to this conclusion because the trier of fact, and not the expert, is burdened with assessing the credibility and veracity of witnesses. *Id.* at 128–129, 545 N.E.2d at 1240.

Appellant's contentions present us with the question whether expert testimony can be used to show that a child is *lying*. For the reasons stated in *Boston,* we hold that an expert may not testify as to the expert's opinion of the truth or falsi-

ty, or accuracy or inaccuracy, of the statements of a child declarant. Applying this court's holding in *Boston,* it would have been error to allow the testimony of appellant's expert witness, as the panel was charged with the duty of assessing the credibility of witnesses. Accordingly, appellant's first and fifth propositions of law are not persuasive. *Moreland,* 50 Ohio St.3d at 60–62, 552 N.E.2d 894.

In support of the substance of his claims in his Sixth and Seventh Grounds for Relief, Mr. Moreland relies on and cites to only state law. Mr. Moreland argues only in general terms that the trial court's failure to conduct a full evidentiary hearing into Dayron Talbott's competency, allow a psychiatric examination of Dayron Talbott, and to admit opinion testimony from a defense expert on the issue of Dayron Talbott's susceptibility to suggestion and influence from others regarding his eyewitness identification were violations of his right to a fair trial, due process and confrontation. In other words, substantively, Mr. Moreland argues that the trial court's failures were violations of *state* law.

As noted above, federal habeas is relief is available only after the petitioner has exhausted the claim in state courts. In instances where a petitioner alleges that his or her sentence from a state court violates federal law, the state courts should be provided a full and fair opportunity to adjudicate the federal claim and provide relief. *O'Sullivan,* 526 U.S. at 838, 119 S.Ct. 1728. When a petitioner has deprived the state courts of an opportunity to resolve a federal constitutional claim prior to bringing such claim before the federal courts, and the claim cannot now be brought before the state courts, the claim is procedurally defaulted. *Id.* The petitioner is ineligible for federal habeas relief on this claim unless cause and preju-

dice or a miscarriage of justice can be shown. *Murray*, 477 U.S. at 485, 106 S.Ct. 2639.

Mr. Moreland never raised in any of the state court proceedings these particular claims as *federal* constitutional claims. *See* Appendix, Vol. 2 at 90–98 (brief on direct appeal to the court of appeals); *Id.,* Vol. 3 at 76–87 (brief on direct appeal to the Ohio Supreme Court); *Id.,* Vol. 5 at 30–21 (petition for post-conviction relief); *Id.,* Vol. 6 at 9–10 (memorandum in opposition to state's motion for summary judgment in post-conviction proceedings); *Id.,* Vol. 8 at 79–125 (brief on appeal to the court of appeals in post-conviction proceedings); *Id.,* Vol. 10 at 7–103 (memorandum in support of jurisdiction in Ohio Supreme Court on appeal in post-conviction proceedings). In presenting the claims in the state courts, Mr. Moreland addressed his claims solely as a violations of state law. As a result, the state courts were denied an opportunity to resolve any question of federal law as it pertains to these claims and those courts addressed the claims exclusively on the merits of state law. It is apparent that Mr. Moreland no longer has a right to raise such claims under state law either through direct appeal or post-conviction relief proceedings. 28 U.S.C. § 2254(c). Furthermore, Mr. Moreland does not assert that he has satisfied the "cause and prejudice" or miscarriage of justice standards for not presenting these claims prior to his federal proceedings. As such, Mr. Moreland failed to present his Sixth Ground for Relief or his Seventh Ground for Relief to the state courts in a timely manner and the claims are procedurally defaulted.

In any event, even assuming that these claims are not procedurally defaulted, to the extent that Mr. Moreland asserts a violation of state law, such claim is not appropriate for federal habeas corpus review. A federal court may review a state

prisoner's habeas petition only on the ground that the challenged sentence is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 169, 102 L.Ed.2d 139 (1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law of procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988), *cert. denied*, 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). Federal courts must defer to a state court's interpretation of its own rules of evidence and procedure in considering a habeas petition. *Id.* (citation omitted).

Accordingly, even in the absence of a procedural default, this court could not grant habeas relief to Mr. Moreland on his state law claim.

Mr. Moreland's Sixth Ground for Relief and Seventh Ground for Relief should be denied.

### Eighth Ground for Relief

**Samuel Moreland's right to due process and freedom from cruel and unusual punishments under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [sic] violated when the death penalty was imposed in this case.**

In his Eighth Ground for Relief, Mr. Moreland challenges the constitutionality of the death penalty in general as well as the constitutionality of Ohio's death penalty scheme on its face. Specifically, Mr. Moreland argues that the death penalty violates the Eighth's Amendment's prohibition against cruel and unusual punishment. As to the Ohio death penalty, Mr.

Moreland's position is that it is unconstitutional because it is applied in an arbitrary and capricious manner due to prosecutorial discretion, does not give a life sentence option when aggravating circumstances outweigh mitigating factors, and because it fails to give a standard for balancing factors.

In rejecting this claim, the Ohio Supreme Court said:

Appellant, in his thirteenth proposition of law, raises arguments concerning the constitutionality of Ohio's capital punishment scheme. These arguments have been raised and rejected by this court in previous cases. See, e.g., [State v.] Steffen, [ (1987), 31 Ohio St.3d 111, 124, 509 N.E.2d 383] supra; State v. Buell (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; and State v. Jenkins (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264.

As appellant presents us with no compelling reason why we should not adhere to our prior position on these issues, we reject appellant's thirteenth proposition of law.

Moreland, 50 Ohio St.3d at 68–70, 552 N.E.2d 894.

First, Mr. Moreland's general challenge to the death penalty on the basis that it is cruel and unusual punishment is not well taken on the authority of Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), where a majority of the Court concluded that he death penalty does not invariably violate the Cruel and Unusual Punishment Clause of the Eighth Amendment. (emphasis supplied).

Second, this Court notes that the Sixth Circuit has continued to reject challenges to the constitutionality of Ohio's death penalty statutes including some of the challenges Mr. Moreland raises in his Petition. See Buell v. Mitchell, 274 F.3d 337, 367 (6th Cir.2001); Scott v. Mitchell, 209 F.3d 854 (6th Cir.), cert. denied, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

Mr. Moreland argues generally that the Ohio death penalty scheme is unconstitutional on the basis that it is applied in an arbitrary and capricious manner due to prosecutorial discretion. Without more, that argument is rejected on the authority of Gregg, 428 U.S. at 195, 96 S.Ct. 2909 ("[T]he concerns expressed in Furman [v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ] that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance.").

To the extent that Mr. Moreland argues generally that the Ohio death penalty scheme is unconstitutional on the basis that prosecutors in Ohio have the discretion to decide whether to prosecute, to plea bargain, or to even seek a sentence of death, that argument is rejected on the authority of McCleskey v. Kemp, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) ("[T]he capacity of prosecutorial discretion is firmly entrenched in American law.") (citation omitted). Id. at 311–12, 107 S.Ct. 1756; see also, Buell, supra.

In the event that Mr. Moreland is suggesting that the Ohio death penalty scheme allows for selective prosecution which results in imposition of the death penalty in a discriminatory manner, he has provided no evidence that the prosecutor in his case acted in a discriminatory manner.

In McCleskey, supra, the Court noted the basic principle that a criminal defendant who alleges an equal protection violation has the burden of proving "the existence of purposeful discrimination". Id. at 293, 107 S.Ct. 1756. The Court also noted that a corollary to that principle is

that the criminal defendant must prove that the purposeful discrimination "had a discriminatory effect" on him. *Id., citing, Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Stated differently, to prevail on an equal protection claim, the criminal defendant must prove that the decisionmakers in *his* case acted with discriminatory purpose. *McCleskey, supra.* In addition, while acknowledging that it has accepted statistics as proof of intent to discriminate in certain limited contexts, such as in the selection of the jury venire in a particular district and to prove statutory violations under Title VII of the Civil Rights Act of 1964, the *McCleskey* Court noted that decisions to prosecute are "unique in nature" and involve "infinite factual variations." *Id.* at 295–97, 107 S.Ct. 1756. In addition, the Court noted the policy considerations behind a prosecutor's traditionally "wide discretion" suggest the impropriety of requiring prosecutors to defend their decisions to seek death penalties, "often years after they were made". *Id.* at 296, 107 S.Ct. 1756. The Court determined that "[b]ecause discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." *Id.* at 297, 107 S.Ct. 1756.

Mr. Moreland's final challenge to the Ohio death penalty scheme is that it is unconstitutional because it does not give a life sentence option when aggravating circumstances outweigh mitigating factors or fails to give standards to balance factors. That argument is rejected on the authority of *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) and *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); *see also, Gregg,* 428 U.S. at 197, 96 S.Ct. 2909.

Mr. Moreland's Eighth Ground for Relief is without merit.

### Ninth Ground for Relief

**Samuel Moreland's right to a fair trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated when the State Trial Court failed to permit discovery in Mr. Moreland's post-conviction relief hearing.**

▆ In support of his Ninth Ground for Relief, Mr. Moreland argues that during post-conviction proceedings, on remand by the court of appeals the trial court erred by denying his discovery requests.

As noted above, on Mr. Moreland's appeal of the trial court's first denial of his post-conviction petition, the court of appeals remanded the matter for a hearing. The trial court held a hearing and again denied Mr. Moreland's petition. Mr. Moreland appealed the trial court's second denial of his post-conviction petition and in that appeal, he raised this claim. For habeas purposes, the Ohio Supreme Court implicitly adopted the court of appeals' opinion when it declined to accept Mr. Moreland's appeal to that court.

Mr. Moreland raised the claim of discovery during post-conviction proceedings in the court of appeals. In rejecting Mr. Moreland's current claim, the court of appeals said:

> Moreland essentially contends under this assignment that Ohio's post-conviction relief statutes are constitutionally deficient because they do not allow for discovery. We have considered this contention in *State v. Taylor,* (June 29, 2001), Green App. No 2000 CA 77, 2000 CA 103, 2001 WL 731986, and stated:
>
> > State post-conviction review is not a constitutional right. *State v. Kinley* (1999), 136 Ohio App.3d 1, 7, 735 N.E.2d 921, 926, dismissed (2000), 88 Ohio St.3d 1444, 725 N.E.2d 284 (citation omitted). Thus, a petitioner for

post-conviction relief receives no more rights than those granted by the post-conviction relief statute, R.C. 2953.12. *Id.,* citing *State v. Calhoun* (1999), 86 Ohio St.3d 279, 281, 714 N.E.2d 905, 909. Although R.C. 2953.21 does not grant a petitioner the right to conduct discovery, the statute is not unconstitutional because a defendant has no constitutional right to state post-conviction relief generally.

The assignment of error is overruled. *Moreland,* 2004 WL 2436589 at *5.

The issue is, of course, whether the court of appeals decision is contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. However, Mr. Moreland has cited to no substantive federal law in support of his Ninth Ground for Relief. Nevertheless, he arguably federalized his claim on appeal to the state court of appeals. *See* Appendix, Vol. 12 at 60–62.

 The United States Supreme Court has been unwilling to adopt the position that when a state chooses to offer help to those seeking collateral relief from convictions, the federal constitution dictates the exact form such assistance must assume. *Pennsylvania v. Finley,* 481 U.S. 551, 559, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). On the contrary, the Court recognizes that in this area states have substantial discretion to develop and implement programs to aid prisoners seeking to secure post-conviction review. *Id.* The Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir.2007), citing *Kirby v. Dutton,* 794 F.2d 245, 246–47 (6th Cir.1986); *Roe v. Baker,* 316 F.3d 557, 571 (6th Cir.2002). Claims challenging state collateral post-conviction proceedings cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254, be-

cause the essence of habeas corpus is an attack by a person in custody and the traditional function of the writ is to secure release from illegal custody. *Palmer,* 484 F.3d at 853 (citations omitted). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not result in release or a reduction in time to be served or in any other way affect his detention because the court would not be reviewing any matter directly pertaining to his detention. *Id.* (citation omitted). Though the ultimate goal in a case alleging post-conviction error is release from confinement, the result of habeas review of the specific issue is not in any way related to the confinement. *Id.* (citation omitted). Accordingly, the Sixth Circuit has held repeatedly that the scope of the writ does not reach this second tier of complaints about deficiencies in state post-conviction proceedings noting that the writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration. *Id.* (citations omitted).

It is clear that Mr. Moreland is seeking habeas review of his post-conviction proceedings. Based on the foregoing authority, Mr. Moreland's Ninth Ground for Relief should be rejected.

### Conclusion

Mr. Moreland's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, (Doc. 14), should be denied. Judgment should be entered in favor of the Respondent and against the Petitioner dismissing the Petition with prejudice.

October 23, 2008.

### Appendix

Assignments of Error on direct appeal to the Montgomery County Court of Appeals:

### ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAWS IN THAT SUCH LAWS DEPRIVE A CONVICTED DEFENDANT OF LIFE WITHOUT DUE PROCESS OF LAW.

Issue A. The State must demonstrate a compelling state interest in application of the death penalty.

Issue B. The Death Penalty does not deter others.

Issue C. Incapacitation of the offender can be the effective means less restrictive than death.

Issue D. There is no showing that retribution, if it is to be considered, cannot be equally satisfied by a less onerous penalty.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAWS IN THAT SAID STATUTES IMPOSE CRUEL AND UNUSUAL PUNISHMENT.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY STATUTES IN THAT SAID STATUTES FAIL TO ELIMINATE APPLICATION OF THE DEATH PENALTY IN AN ARBITRARY AND CAPRICIOUS MANNER.

Issue A. Past experience in the nation and Ohio establishes a pattern of arbitrary and discriminatory application of the death penalty.

Issue B. Arbitrary and capricious applications of the death penalty will persist because of the uncontrolled discretion of the prosecutor.

### ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAWS IN THAT SUCH LAWS FAIL TO REQUIRE THE TRIER OF FACT TO SPECIFY REASONS FOR THE IMPOSITION OF LIFE IMPRISONMENT INSTEAD OF DEATH.

### ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAWS IN THAT SAID STATUTES FAIL TO REQUIRE A TRIER OF FACT TO DECIDE THE APPROPRIATENESS OF THE DEATH PENALTY.

### ASSIGNMENT OF ERROR NO. 6

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAWS IN THAT THOSE PROVISIONS PERMIT THE IMPOSITION OF THE DEATH PENALTY ON LESS THAN AN ADEQUATE SHOWING OF GUILT.

Issue 1. Proof beyond all doubt is required for conviction.

Issue 2. Ohio's proof beyond a reasonable doubt standard.

Issue 3. Proof beyond all doubt as to guilt is necessary before the death sentence may be imposed.

Issue 4. At a minimum, the fact that the evidence does not foreclose all doubt as to guilt must be considered by the sentencing authority as a relevant mitigating factor; yet it is not specified in Section 2929.04(B) of the Revised Code of Ohio.

## ASSIGNMENT OF ERROR NO. 7

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY LAWS IN THAT SAID STATUTES REQUIRE PROOF OF AGGRAVATING CIRCUMSTANCES IN THE GUILT PHASE OF THE TRIAL.

## ASSIGNMENT OF ERROR NO. 8

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE UNCONSTITUTIONALITY OF OHIO'S DEATH PENALTY STATUTES IN THAT SAID LAWS FAIL TO PROVIDE ADEQUATE GUIDELINES FOR WEIGHING AGGRAVATED AND MITIGATING CIRCUMSTANCES, SAID MITIGATING CIRCUMSTANCES ARE VAGUE, NO ADEQUATE BURDEN OF PROOF IS DEFINED AND THE DEATH PENALTY MAY BE IMPOSED EVEN IN THE PRESENCE OF MITIGATING CIRCUMSTANCES.

Issue A. Sections 2929.03, 2929.04 of the Revised Code of Ohio violate the Eighth and Fourteenth Amendments to the United States Constitution by failing to provide adequate guidelines for deliberation, leaving the jury without proper guidance in balancing the aggravating and mitigating circumstances.

Issue B. The mitigating circumstances in Section 2919.04(B)(1), (2), (3), (4), (5) and (6) of the Revised Code of Ohio are vague.

Issue C. Sections 2929.03, 2929.04 and 2929.05 of the Revised Code of Ohio violate the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution in failing to allocate properly the burden of proof for existence of mitigating factors.

Issue D. Sections 2929.03, 2929.04 and 2929.05 of the Revised Code of Ohio violate the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution in allowing the imposition of the death penalty in the presence of mitigating circumstances.

## ASSIGNMENT OF ERROR NO. 9

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO APPOINT A SPECIAL HEARING JUDGE TO DECIDE THE EVIDENTIARY ISSUES OF THE CASE AND THEREBY INSULATE THE THREE–JUDGE PANEL FROM EVIDENCE WHICH MIGHT HAVE BEEN PREJUDICIAL OR INFLAMMATORY.

## ASSIGNMENT OF ERROR NO. 10

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN THE COURT INADEQUATELY EXAMINED THE CHILD WITNESS, DAYRON TALBOTT, TO DETERMINE HIS COMPETANCY [sic] TO TESTIFY AND REFUSED TO ALLOW EXPERT EVALUATION AND EXAMINATION ON HIS COMPENTANCY [sic]. THE COURT THEN

FURTHER ERRED IN REFUSING TO ALLOW APPELLANT'S EXPERT WITNESS TO GIVE AN OPINION AS TO THE CHILD'S CREDIBILITY OR ABILITY TO ACCURATELY RECALL EVENTS, ALL TO APPELLANT'S PREJUDICE.

Issue A. The trial court's refusal to allow expert evaluation of the witness prior to a competancy [sic] determination.

Issue B. The inadequacy of the trial court's competancy [sic] examination and refusal to allow appellant's counsel to participate in that examination.

Issue C. Refusal to admit appellant's expert testimony regarding the witness' ability to accurately recall events or witness' credibility.

## ASSIGNMENT OF ERROR NO. 11

THE TRIAL COURT ERRED IN ADMITTING CERTAIN PHOTOGRAPHS INTO EVIDENCE AS THESE PHOTOGRAPHS WERE REPETITIVE AND CUMMULATIVE [sic] IN NATURE AND THE PROBATIVE VALUE DID NOT OUTWEIGH THE PREJUDICE TO APPELLANT OF THE ADMISSION OF THE PHOTOS.

## ASSIGNMENT OF ERROR NO. 12

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE AND VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATE CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO STATE CONSTITUTION BY ALLOWING THE STATE TO INTRODUCE EVIDENCE OF APPELLANT'S EXERCISE OF HIS RIGHT TO REMAIN SILENT TO ATTEMPT TO SHOW APPELLANT'S LACK OF MENTAL ILLNESS AND TO IMPROPERLY ARGUE SUCH EVIDENCE IN THE SENTENCING PHASE OF THIS CASE. TO IMPOSE THE DEATH PENALTY IN SUCH CIRCUMSTANCES WOULD VIOLATE APPELLANT'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATE CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION.

## ASSIGNMENT OF ERROR NO. 13

THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE AND VIOLATED APPELLANT'S RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTIUTION [sic] AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION BY IMPOSING THE DEATH SENTENCE AS A RESULT OF CONSIDERING NONSTATUTORY AND UNCONSTITUTIONAL AGGRAVATING CIRCUMSTANCES IN ITS SENTENCING DECISION.

## ASSIGNMENT OF ERROR NO. 14

THE TRIAL COURT ERRED IN IMPOSING THE DEATH PENALTY IN THIS CASE IN FAILING TO SET FORTH ADEQUATE FACTUAL AND LEGAL REASONS FOR ITS CONCLUSION THAT THE DEATH PENALTY SHOULD BE IMPOSED THEREBY MAKING MEANINGFUL APPELLATE REVIEW OF THE APPROPRIATENESS OF THE DEATH PENALTY IMPOSSIBLE.

## ASSIGNMENT OF ERROR NO. 15

THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHTS UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES

CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION IN IMPOSING A DEATH SENTENCE WHEN APPELLANT PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT BECAUSE OF MENTAL DISEASE OR DEFECT HE LACKED SUBSTANTIAL CAPACITY TO CONFORM HIS CONDUCT TO THE REQUIREMENTS OF THE LAW.

*ASSIGNMENT OF ERROR NO. 16*

THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF CONVICTION AGAINST APPELLANT AND THIS COURT MUST REVERSE SAID JUDGMENT FOR THE VERDICTS OF GUILTY ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*ASSIGNMENT OF ERROR NO. 17*

THIS COURT SHOULD VACATE THE DEATH PENALTY IMPOSED PURSUANT TO R.C. 2929.05(b) AND THIS COURT'S DUTY TO INDEPENDENTLY WEIGH THE AGGRAVATING CIRCUMSTANCE AND MITIGATING FACTORS IN THIS CASE AND DETERMINE THE APPROPRIATENESS OF THE DEATH PENALTY.

*State v. Moreland,* No. 9907, 1988 WL 95894 (Ohio App. 2nd Dist. Sept. 16, 1988); Appendix, Vol. 2. at 56–120.

Propositions of Law on direct appeal to the Ohio Supreme Court:

*PROPOSITION OF LAW NO. 1*

WHEN A CHILD WITNESS HAS BEEN SUBJECTED TO IMPROPER LEADING QUESTIONS, SUGGESTION, MULTIPLE INTERROGATIONS AND SOCIAL PRESSURE TO CONFORM TO THE OPINIONS OF ADULTS, IT IS ESSENTIAL TO

CONDUCT AN EVIDENTIARY HEARING ON THE CHILD'S COMPETENCY AND THE ADMISSIBILITY OF HIS TESTIMONY TO SAFEGUARD RELIABILITY IN A CAPITAL CASE.

I. The Issue is Admissibility, Not Credibility

II. Factors in Dayron's Pre–Trial Questioning Produced Error In His Accounts and Demonstrated The Necessity of a Hearing on His Competency

 A. Dayron was subject to leading questions and suggestions

 B. Several other factors prior to trial introduced error in Dayron's account

III. The Voir Dire Procedure in this Case was Inadequate to Determine Dayron Talbott's Competency

*PROPOSITION OF LAW NO. II*

EXPERT SCIENTIFIC TESTIMONY MUST BE BASED ON REASONABLE CERTAINTY OR PROBABILITY TO BE ADMITTED IN A CRIMINAL TRIAL. THE IMPROPER ADMISSION OF INCRIMINATING SCIENTIFIC TESTIMONY BASED ON INCONCLUSIVE TEST RESULTS VIOLATES THE CAPITAL DEFENDANT'S RIGHTS TO DUE PROCESS, A FAIR TRIAL AND RELIABLE DETERMINATION OF GUILT UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

*PROPOSITION OF LAW NO. III*

ELECTROPHORESIS IS NOT A RELIABLE TECHNIQUE FOR ANALYZING DRIED BLOOD. SCIENTIFIC EVIDENCE BASED ON

ELECTROPHORESIS EITHER (1) SHOULD NOT BE ADMISSIBLE IN A CRIMINAL CASE OR (2) SHOULD BE ADMITTED ONLY IF THE PROPONENT OF THE EVIDENCE DEMONSTRATES ITS RELIABILITY.

### PROPOSITION OF LAW NO. IV

ADMISSION OF UNEXPLAINED AND UNQUALIFIED STATISTICAL FREQUENCY EVIDENCE ON BLOOD TYPES VIOLATES EVID. R. 402(A) AND DENIES THE CAPITAL DEFENDANT HIS RIGHTS TO A FAIR AND RELIABLE GUILT DETERMINATION UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9, 10 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. V

THE OPINION OF A CHILD PSYCHOLOGIST IS ADMISSIBLE REGARDING THE CREDIBILITY OF A PARTICULAR CHILD WITNESS WHEN THERE IS A SPECIAL IDENTIFIABLE NEED FOR THE TESTIMONY SUCH AS AN UNUSUAL PSYCHOLOGICAL RELATIONSHIP BETWEEN THE CHILD AND HIS MOTHER WHICH IMPAIRS THE CHILD'S ABILITY TO RECALL EVENTS ACCURATELY.

### PROPOSITION OF LAW NO. VI

A CAPITAL DEFENDANT IS DENIED HIS RIGHTS TO A FAIR TRIAL AND A RELIABLE DETERMINATION OF HIS GUILT WHEN GRUESOME, PREJUDICIAL AND CUMULATIVE PHOTOGRAPHS ARE ADMITTED INTO EVIDENCE EVEN THOUGH THEIR PREJUDICIAL EFFECT OUTWEIGHS THEIR PROBATIVE VALUE.

### PROPOSITION OF LAW NO. VII

EGREGIOUS PROSECUTORIAL MISCONDUCT IN EVIDENCE AND ARGUMENT DURING THE GUILT AND PENALTY PHASES OF A CAPITAL TRIAL DENIES THE CAPITAL DEFENDANT HIS RIGHTS TO DUE PROCESS, A FAIR TRIAL AND A FAIR AND RELIABLE SENTENCING DETERMINATION UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND SECTIONS 9, 10 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION

### PROPOSITION OF LAW NO. VIII

A CONVICTION OF AGGRAVATED MURDER UNDER R.C. 2903.01(A) IS CONTRARY TO LAW AND DEPRIVES THE CAPITAL DEFENDANT OF DUE PROCESS WHEN THERE IS INSUFFICIENT EVIDENCE OF PRIOR CALCULATION AND DESIGN.

### PROPOSITION OF LAW NO. IX

THE GUILTY VERDICTS IN APPELLANT MORELAND'S CASE WERE AGAINST THE WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. X

A CAPITAL SENTENCER'S REFUSAL TO WEIGH MITIGATING EVIDENCE AND ITS RELIANCE ON NON-STATUTORY AGGRAVATING

CIRCUMSTANCES RENDER THE SENTENCE OF DEATH UNRELIABLE, INAPPROPRIATE AND CONSTITUTIONALLY INFIRM UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION.

## PROPOSITION OF LAW NO. XI

WHERE EGREGIOUS ERRORS ARE PRESENT IN BOTH GUILT AND PENALTY PHASES OF A CAPITAL TRIAL THE DEATH SENTENCE IS UNRELIABLE, INAPPROPRIATE AND VIOLATIVE OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION.

## PROPOSITION OF LAW NO. XII

A CAPITAL DEFENDANT'S CONVICTIONS AND DEATH SENTENCE CANNOT STAND WHEN THE DEFENDANT IS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

I. Trial Ineffectiveness

II. Appellate Ineffectiveness

## PROPOSITION OF LAW NO. XIII

THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION ESTABLISH THE REQUIREMENTS FOR A VALID DEATH PENALTY SCHEME. OHIO REVISED CODE SECTIONS 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 AND 2929.05, OHIO'S STATUTORY PROVISIONS GOVERNING THE IMPOSITION OF THE DEATH PENALTY, DO NOT MEET THE PRESCRIBED REQUIREMENTS, AND, THUS, ARE UNCONSTITUTIONAL BOTH ON THEIR FACE AND AS APPLIED TO APPELLANT MORELAND.

Appendix, Vol. 3 at 75–168; *State v. Moreland,* 50 Ohio St.3d 58, 552 N.E.2d 894 (1990).

### FIRST CAUSE OF ACTION

[denial of Mr. Moreland's right to access to public records]

### SECOND CAUSE OF ACTION

Petitioner Moreland's conviction and sentence are void or voidable because the Ohio death penalty is in violation of international laws and Article VI of the United States Constitution.

### THIRD CAUSE OF ACTION

The judgment against Mr. Moreland is void or voidable because the panel could not consider sympathy as a factor in its sentencing decision. Consequently, Mr. Moreland's right against cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution has been violated.

### FOURTH CAUSE OF ACTION

The judgment against Mr. Moreland is void or voidable because the panel re-

fused to allow defense counsel to open and end closing arguments in the mitigation portion of his trial, even though the Petitioner had the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution were violated.

### FIFTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the record on direct appeal was incomplete. No transcripts of Mr. Moreland's arraignment hearings in the [Dayton] Municipal Court and Montgomery County Common Pleas Court were included in his direct appeal to the Montgomery County Court of Appeals. Numerous pretrial hearings, including such crucial matters as motions hearings and Mr. Moreland's waiver of trial by jury, were never recorded or transcribed. Numerous conferences, court rulings, and side bar conferences during the trial were never recorded or transcribed. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution were violated.

### SIXTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the incomplete record made it impossible for the Montgomery County Court of Appeals and Ohio Supreme Court to discharge their duty under R.C. Section 2929.05(A) to independently weigh all the facts and other evidence in his case. By upholding the sentence of death while failing to review all the facts and other evidence in this case, the appellate courts have violated Petitioner's constitutional rights to due process, equal protection, a meaningful appeal, and against cruel and unusual punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and under Article I, Sections 10 and 16 of the Ohio Constitution.

### SEVENTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the trial court failed to conduct an evidentiary hearing into the competency and admissibility of child witness Dayron Talbott's testimony. As a result, Petitioner was denied his rights of confrontation, compulsory process, due process and his rights to a fair trial and a reliable determination of his guilt in a capital case under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

### EIGHTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the three judge panel admitted expert scientific testimony [Gary Shaffer's testimony re: atomic absorption test] which was not based upon reasonable certainty or probability. As a result, Petitioner was denied his rights to due process, a fair trial and reliable determination of guilt under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United

States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

### NINTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the three judge panel admitted the testimony of criminalist Laura Kiddon pertaining the electrophoresis which is a technique used to analyze for enzymes in typing enzymes in blood and body fluids because there are serious scientific questions about electrophoresis. As a result, Petitioner was denied his rights to due process, a fair trial and reliable determination of his guilt in a capital case under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution.

### TENTH CAUSE OF ACTION

Petitioner Moreland's conviction and sentence are void or voidable because the three judge panel admitted testimony of unexplained and unqualified statistical frequency evidence on blood type. As a result, Petitioner was denied his rights to due process and to a fair and reliable guilt determination under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

### ELEVENTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable in that the three judge panel abused its discretion in excluding important opinion testimony from a defense expert on the particular issue of Dayron Talbott's susceptibility to suggestion and influence from his mother. As a result, Petitioner was denied his right to present a defense as well as his rights to due process and a fair and reliable determination of his guilt as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

### TWELFTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable due to the gruesome, inflammatory and cumulative photographs which were admitted into evidence in this case. As a result, Petitioner was denied a fair trial and a reliable determination of his guilt as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Section 9, 10, and 16, Article I of the Ohio Constitution.

### THIRTEENTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable due to the egregious prosecutorial misconduct in evidence and argument during the guilt and penalty phase of Petitioner's trial. (1) The prosecutor improperly used Petitioner's reliance on his *Miranda* rights as evidence of his guilt of the crime of aggravated murder.

(2) The prosecutor improperly argued matters not supported by the evidence when he argued that the Petitioner had changed a lot of his clothes, and that was why no blood was found on them. There was no evidence introduced at the guilt phase of Petitioner's trial which established that he had ever changed his clothes.

(3) The prosecutor improperly argued that while they [jury] heard constantly about Petitioner's rights, they did not hear about the young children. It is

improper to claim that a capital defendant has more rights than he ought to.

(4) The prosecutor improperly argued that Petitioner's reliance on his *Miranda* rights discredited the mitigating factor of his intoxication.

(5) The prosecutor misstated the evidence that Petitioner had presented through his expert witness, Dr. Schramm.

(6) The prosecutor make improper arguments in the penalty phase by referring to gruesome photographs not in evidence.

(7) The prosecutor made an emotional penalty phase closing argument in which he converted the nature and circumstances of the offense into non-statutory aggravating circumstances.

(8) The prosecutor placed 8 × 10 color photographs of each of the five victims behind him on the banister as he made his closing argument.

As a result, Petitioner was denied his right to due process, a fair trial and a fair and reliable sentencing determination as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

*FOURTEENTH CAUSE OF ACTION*

The judgment against Petitioner Moreland is void or voidable because there was insufficient evidence of prior calculation and design to support a conviction of aggravated murder under R.C. 2903.01(A). As a result, Petitioner was denied his rights to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

*FIFTEENTH CAUSE OF ACTION*

The judgment against Petitioner Moreland is void or voidable because the guilty verdicts in his case were against the weight of the evidence. As a result, Petitioner was denied his right to due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

*SIXTEENTH CAUSE OF ACTION*

The judgment against Petitioner Moreland is void or voidable because the three judge panel's opinion establishes that its weighing process was fundamentally flawed in two very important respects: one, the panel did not consider relevant mitigating factors put forth by Petitioner Moreland; two, the panel did consider non-statutory aggravating factors in its decision to impose the death sentence. As a result, Petitioner Moreland was denied his rights as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

*SEVENTEENTH CAUSE OF ACTION*

The judgment against Mr. Moreland is void or voidable because he was denied the effective assistance of counsel in the guilt phase of his trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, Sections 9, 10, and 16, Article I of the Ohio Constitution. Defense counsel breached their pretrial duty of preparation in the following manner:

(A) Failed to obtain an independent firearms expert who would have been able to contest prosecution witness Gary Shaffer's opinion that the inconclusive

atomic absorption test results really meant that Mr. Moreland used the murder weapon, (See Cause of Action 32).

(B) Failed to obtain an independent expert on blood who could have challenged state criminalist Laura Kiddon's analysis matching the blood of the victims to the blood on Mr. Moreland's jeans, as well as her testimony regarding the statistical frequency of certain blood types. (See Cause of Action 33).

(C) Failed to submit any evidence in support of their motion for a change of venue. (Exhibit 20).

(D) Failed to file a motion to suppress the various admissions Mr. Moreland allegedly made after his arrest which were used by the prosecution during his trial.

(E) Failed to file a motion to suppress the various items taken from Mr. Moreland after his arrest, as well as in various searches.

(F) Failed to file a motion challenging or otherwise object to the improper denial of bond. (See Cause of Action 35).

(G) Failed to file a motion challenging or otherwise object to the improper grand jury procedure in Mr. Moreland's case. (See Cause of Action 34).

Counsel also breached their duty by advising Mr. Moreland to waive his right to a jury trial without first considering, and also making sure that Mr. Moreland was aware of all the relevant circumstances and likely consequences of the waiver of his constitutional rights. (See Cause or Action 30).

Defense counsel breached their duty by failing to ensure that a complete record of all proceedings was maintained, including numerous pre-trial hearings which included such crucial matters as motions hearings and Mr. Moreland's waiver of jury, as well as numerous conferences during the trial which included such crucial topics as court imposed time limitations and evidentiary matters.

There were several additional acts or omissions by trial counsel which fell below an objective standard of reasonableness. Each of these had an adverse effect on the results of the proceedings.

(1) At the guilt phase of Petitioner's trial, his counsel admitted by agreement virtually all of the thirty-nine gruesome photographs which the prosecution displayed. Counsel objected to only five of these photographs. Counsel failed to contest the repetitive, cumulative and inflammatory nature of the remaining photographs.

(2) Counsel failed to object to the testimony of state's expert Laura Kiddon, the serologist who stated that dried blood stains on Petitioner's jeans matched that of two of the victims. Ms. Kiddon used the scientific technique called electrophoresis as the basis of her testimony. Counsel never challenged the reliability of the electrophoretic evidence used against Petitioner.

(3) Counsel failed to object to the prosecution's repeated attempts to use Petitioner's reliance on his *Miranda* rights as evidence of his guilt.

As a result, Petitioner was denied his right to effective assistance of counsel at trial in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

### EIGHTEENTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because he was deprived of the effective assistance of counsel on his direct appeal before the court of appeals. The following issues were not raised before the court of appeals:

(1) The trial court's admission and consideration of cumulative, repetitive and inflammatory gruesome photographs of the victims.

(2) The trial court's erroneous admission and consideration of spurious expert testimony incriminating Mr. Moreland on the basis of an inconclusive atomic absorption test.

(3) The trial court's erroneous admission and consideration of unreliable electrophoretic evidence matching blood on Mr. Moreland's jeans with blood of two of the victims.

(4) The prosecution's improper use of Mr. Moreland's reliance on his *Miranda* rights as substantive evidence of his guilt and as evidence disproving his voluntary intoxication defense.

(5) The sufficiency of the evidence of prior calculation and design.

(6) The trial court's refusal to consider much of the evidence Mr. Moreland introduced in mitigation of his sentence.

As a result, Petitioner was denied his right to effective assistance of appellate counsel in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

## NINETEENTH CAUSE OF ACTION

The judgment against Petitioner is void or voidable because the Ohio death penalty scheme is unconstitutional on its face in violation of the United States Constitution and the Ohio Constitution. The Ohio death penalty scheme:

(1) violates the prohibition under the Eighth Amendment to the United States Constitution against cruel and unusual punishment and Section 9, Article I of the Ohio Constitution;

(2) is applied in an arbitrary and capricious fashion because it permits prosecutors to exercise discretion in deciding who will be charged with capital offenses;

(3) fails to require premeditation or deliberation as the culpable mental state for defendants in all capital cases;

(4) sets forth no standard of proof to be applied in determining mitigating factors;

(5) fails to give the jury a standard with which to balance the mitigating factors against the aggravating circumstances;

(6) allows consideration of aggravating circumstances at the guilt phase of the trial;

(7) treats felony murders more harshly than premeditated murder;

(8) does not give the sentencing authority the option to impose a life sentence or give mercy when it finds that the aggravating circumstances outweigh the mitigating factors;

(9) allows for a bifurcated trial with the same jury which denied the defendant an impartial jury and the effective assistance of counsel;

(10) encourages defendants to waive their fundamental rights and enter a guilty plea;

(11) is a mandatory death penalty;

(12) eliminates sentencing discretion;

(13) mandates that a jury recommend death if it finds that the aggravating circumstances outweigh the mitigating factors at the sentencing phase of the trial;

Therefore, the imposition of a death sentence pursuant to Ohio's capital sentencing scheme violated the Petitioner's rights as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

### TWENTIETH CAUSE OF ACTION

The judgment against Petitioner is void or voidable because he was denied a fair and impartial review of his death sentence as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution. The trial courts in Ohio have consistently ignored the proportionality review requirements by failing to file sentencing opinions in those cases in which a jury has returned a life verdict in a capital case resulting in an information tracking system that contains only death verdicts. With its biased data base, the safeguard has now become a justification for imposing the death penalty. The removal of the safeguard prejudiced Petitioner and violated his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

### TWENTY–FIRST CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the three judge panel overruled Petitioner Moreland's motion to appoint a special hearing judge who would decide what evidence would or would not be admitted into evidence at trial. As a result, the panel reviewed all of the inflammatory and prejudicial material themselves. As a result, Petitioner was denied his rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and Sections 9 and 16, Article I of the Ohio Constitution.

### TWENTY–SECOND CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the three judge panel erred in imposing the death sentence without setting forth adequate factual and legal reasons for its conclusion that the death penalty should be imposed. As a result, Petitioner was denied his rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and Sections 9 and 16, Article I of the Ohio Constitution.

### TWENTY–THIRD CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the death sentence was imposed even though Petitioner proved by a preponderance of the evidence that because of mental disease or defect he lacked substantial capacity to conform his conduct to the requirements of the law. As a result, Petitioner was denied his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

### TWENTY–FOURTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because he was denied meaningful appellate review of his death sentence when the state appellate court presumed that constitutional error had no influence on the verdict in a three-judge panel case and when the state appellate court does not assess constitutional error in accordance with the proper standard. As a result, Petitioner was denied his rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

### TWENTY–FIFTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because Judge Kessler, one of the three judges deciding Petitioner's case, read an inflammatory and prejudicial newspaper article which appeared in the Dayton newspaper, the Journal Herald, the day prior to the start of the trial. As a result, Petitioner was denied his rights as guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

### TWENTY–SIXTH GROUND FOR RELIEF

The judgement against Petitioner Moreland is void or voidable because it would have been impossible for him to have committed this crime given the time frame involved. Petitioner's conviction was therefore imposed in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

### TWENTY–SEVENTH GROUND FOR RELIEF

Petitioner Moreland's convictions and death sentence are void or voidable because defense counsel did not request, nor did the trial court appoint, a cultural expert on the inner city who could have explained the effect the inner city culture had on Samuel Moreland's development. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10,

and 16, Article I of the Ohio Constitution were violated.

### TWENTY–EIGHTH GROUND FOR RELIEF

Petitioner Moreland's death sentence is void or voidable because defense counsel did not request, nor did the trial court appoint, a social worker to assist counsel. Mr. Moreland was prejudiced by the trial court's failure to appoint a social worker since relevant mitigating evidence was available, not introduced, and not considered by the sentencer.

### TWENTY–NINTH GROUND FOR RELIEF

The judgment against Petitioner Moreland is void or voidable because the trial court failed to grant Petitioner's motion for a change of venue. Mr. Moreland was prejudiced by the trial court's refusal to grant his motion for a change of venue since [sic] he was thereby precluded from having his case tried by a fair and impartial jury, and also could not make a knowing, voluntary, and intelligent decision as to whether to waive his right to a jury trial. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution were violated.

### THIRTIETH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because he did not knowingly, voluntarily and intelligently waive his right to a jury trial. Mr. Moreland was prejudiced since he would not have waived his constitutional

right to trial by jury if he had been made award of all the relevant circumstances and likely consequences. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel, trial by jury, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 5, 9, 10, and 16, Article I of the Ohio Constitution were violated.

### THIRTY–FIRST CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the trial court failed to maintain a complete record of all proceedings. The failure of the trial court to maintain such a record prejudiced Petitioner because an appellate court does not have the ability to review the entire proceedings. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution were violated.

### THIRTY–SECOND CAUSE OF ACTION

Mr. Moreland's conviction and death sentence are void or voidable because defense counsel did not request, nor did the trial court appoint, an independent firearms expert who could have contested prosecution witness Gary Shaffer's opinion that the inconclusive atomic absorption test results really meant that Mr. Moreland had used the murder weapon. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel and against cruel and unusual punishment, as guar-

anteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution were violated.

### THIRTY–THIRD CAUSE OF ACTION

Mr. Moreland's conviction and death sentence are void or voidable because defense counsel did not request, nor did the trial court appoint, an independent expert on blood who could have challenged state criminalist Laura Kiddon's analysis matching the blood of the victims to the blood on Mr. Moreland's jeans, as well as her testimony regarding the statistical frequency of certain blood types. As a result, Petitioner's rights to due process, equal protection, effective assistance of counsel and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution were violated.

### THIRTY–FOURTH CAUSE OF ACTION

Petitioner Moreland's conviction and sentence are void or voidable because his indictment was returned by an improperly constituted grand jury and upon inadequately presented evidence. Petitioner Moreland was prejudiced because he was made to answer to (and eventually convicted of) charges that were improperly returned, as a result, unreliable. As a result, Petitioner's rights as guaranteed by the Due Process Clause and Grand Jury Clause of the Fifth Amendment to the United States Constitution, his right to counsel under the Sixth Amendment to the United States Constitution as made applicable

to the individual states by the Fourteenth Amendment to the United States Constitution, his protection from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution as made applicable to the individual states by the Fourteenth Amendment to the United States Constitution, and his rights as guaranteed by the Due Process and Equal Protection Clauses to the United States Constitution. Petitioner's same rights were violated as guaranteed by Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

### THIRTY–FIFTH CAUSE OF ACTION

Petitioner Moreland's conviction and sentence are void or voidable because Petitioner was denied bond prior to trial. Petitioner Moreland was prejudiced by this failure to set bail. If bail had been set, Petitioner Moreland may well have been able to make bail and assist his counsel in preparation of the case. The court's failure to set bail denied Petitioner Moreland his right as guaranteed by Section 9, Article I of the Ohio Constitution and the right to reasonable bail as guaranteed by the Eighth Amendment to the United States Constitution.

### THIRTY–SIXTH CAUSE OF ACTION

Petitioner's conviction and sentence are void or voidable due to the mandatory nature of Ohio's capital statute. As a result, Petitioner Moreland's rights were violated as guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution, the right to counsel as guaranteed by the Sixth Amendment to the United States Constitution as made applicable to the individual states by the by the Fourteenth Amendment to the United States Constitution, the protection against cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution as made applicable to the individual states by the Fourteenth Amendment to the United States Constitution, and his right to due process and equal protection of the Fourteenth Amendment to the United States Constitution. Petitioner's same rights were violated as guaranteed by Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

### THIRTY–SEVENTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because the panel denied him his right of allocution prior to sentencing. As a result, Petitioner was denied his rights to due process, equal protection, effective assistance of counsel, and against cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

### THIRTY–EIGHTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because he was denied the effective assistance of counsel in the mitigation phase of the trial as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution. Defense counsel failed to adequately interview all pertinent family members, friends, and significant people in Petitioner's life and failed to collect all pertinent records with respect to mitigation. Defense counsel also failed to obtain a social worker who could have assisted counsel in preparing mitigation, a

cultural expert on the inner city, and a psychologist to fully develop Mr. Moreland's psychosocial background. During the prosecutor's closing argument in the mitigation phase, defense counsel also failed to provide the guaranteed level of assistance of counsel by not objecting to the prosecutor's:

(A) use of inadmissible and highly prejudicial photographs as a backdrop;

(B) reference to matters not in evidence;

(C) use of non-statutory aggravating circumstances;

(D) attempts to use Mr. Moreland's reliance on his *Miranda* rights as a reason that he should be sentenced to death;

(E) references to victim impact matters, as well as the effect the case allegedly had on the coroner;

(F) personal option that Mr. Moreland should die.

Petitioner Moreland was severely prejudiced by the above cited acts and omissions of his counsel and there exists a reasonable probability that, were it nor for counsel's errors, the recommendation of the panel on the death penalty would have been different.

### THIRTY–NINTH CAUSE OF ACTION

The judgment against Petitioner Moreland is void or voidable because he did not receive the effective assistance of counsel on his direct appeals as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16, Article I of the Ohio Constitution. Appellate counsel was ethically and legally bound to raise all issues in their brief which could have arguably brought Mr. Moreland relief from his conviction or sentence. All issues raised in this petition which could have been raised on direct appeal but were not have prejudiced Mr. Moreland, and denied him the right to effective assistance of appellate counsel as guaranteed by the federal and state constitutions.

### FORTIETH CAUSE OF ACTION

Petitioner's convictions and sentence are void or voidable because the cumulative effects of the errors and omissions as presented in this petition have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution.

Appendix, Vol. 5 at 13–76.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

MICHAEL R. MERZ, United States Chief Magistrate Judge.

This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 110) to the Magistrate's Judge's Report and Recommendations recommending the Petition be denied (Doc. No. 104, the "Original Report"). Respondent has replied to the Objections (Doc. No. 111). The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

### First Ground for Relief

■ Petitioner's First Ground for Relief reads:

Samuel Moreland's right to a jury trial under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was violated because he did not knowingly, voluntarily

and intelligently waive his right to a jury trial in an Ohio capital murder case.

(Quoted in the Original Report, Doc. No. 104, at 695.)

## Brief on the Merits

In his Brief on the Merits, Petitioner argued that the state court decision finding that the jury waiver was knowing, intelligent, and voluntary was an unreasonable application of clearly established federal law, relying specifically on the concurring opinion of Justice O'Connor in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (Doc. No. 87 at 11.) The clearly established law which Petitioner claims was unreasonably applied is

> For a jury trial waiver to be effective, a criminal defendant must meet the following four (4) conditions: "(1) The waiver must be in writing; (2) the government attorney must consent to the waiver; (3) the trial court must consent to the waiver; and (4) the defendant's waiver must be knowing, voluntary and intelligent."

(Petitioner's Brief at 14, quoting *Spytma v. Howes,* 313 F.3d 363, 370 (6th Cir.2003), citing *United States v. Martin,* 704 F.2d 267, 272 (6th Cir.1983)). Petitioner conceded the first three elements were met, but asserted the last was not met "because there is undisputable evidence that Sam Moreland was under the influence of sodium pentothal at the time the waiver was made." (Petitioner's Brief, Doc. No. 87, at 15.) Thus the heart of Petitioner's argument on Ground One is that he was rendered incompetent to waive a jury trial by having been administered sodium pentothal on the same day as the waiver.

## Original Report and Recommendations

In the Original Report, the Magistrate Judge recommended relief be denied on Ground One for the following three reasons:.

■ First, the question of whether the jury waiver was knowing, intelligent, and voluntary is a question of historical fact. It was the subject of an evidentiary hearing in the Common Pleas Court on Petitioner's petition for post-conviction relief and subsequently of specific findings by the Court of Appeals that the jury waiver was knowing, intelligent, and voluntary. (R & R, Doc. 104, at 22, citing *State v. Moreland,* 2004 WL 2436589 at *1–4 (Ohio App.2 Dist. Oct. 8, 2004); Appendix, Vol. 12, p. 223). Under § 2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Mitchell v. Mason,* 325 F.3d 732, 737–38 (6th Cir.2003); *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir.2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir.2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir.2001), citing *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Second, the testimony given at the evidentiary hearing in this Court confirms rather than undermines the state court conclusions. Seven persons were present for Mr. Moreland's open court discussion of the waiver with Judge Kessler: Messrs. Lieberman and Hoffman [1] as defense counsel, and Messrs. Heck and Cole as prose-

---

1. Mr. Hoffman's recollection was that he stayed in Judge Kessler's chambers while the others went into the courtroom.

cutors, Judge Kessler and his court reporter, and Mr. Moreland. The judge and court reporter are now deceased; Mr. Moreland, although present, did not testify in this Court. All of those who did testify remembered nothing about the occasion which indicated Mr. Moreland did not thoroughly understand what was going on. Thus the factual record created in this Court supported the state court conclusion, rather than providing "clear and convincing" evidence to overcome it.

Third, both Lieberman and Hoffman testified in this Court that they had discussed waiving a jury with Mr. Moreland several times over a period of weeks before the in-court proceeding. Both were experienced defense attorneys at the time and testified to their standard practice of discussing the jury waiver issue with clients and the good reason for doing so in this case—the gruesome pictures of the five dead victims. They also testified Moreland never questioned the absence of a jury during the trial. This testimony is uncontradicted by Mr. Moreland. Thus this circumstantial evidence supports the state court finding that the waiver was knowing, intelligent, and voluntary.

**Petitioner's Objections:**

Petitioner's Objections focus entirely on the failure of the original Report to deal with the testimony of Dr. Arthur Schramm, the psychiatrist who interviewed Moreland in 1986 at his lawyers' request while he was drugged with sodium pentothal (Doc. No. 110 at 2–11).

**Supplemental Analysis**

The original Report dealt with the sodium pentothal question by noting that none of the lawyers involved observed any impact on Mr. Moreland's behavior from the drug during the jury waiver colloquy, assuming the colloquy took place the same day the drug was administered.[2] Petitioner objects that none of these lawyers is a doctor (Objections, Doc. No. 110, at 8.) While that is true, the judicial system necessarily relies on the observations of lawyers to raise questions of competency and no lawyer involved in the jury waiver colloquy had any doubts of Mr. Moreland's competency, even when testifying at an evidentiary hearing twenty-one years after the event.

But Petitioner is correct that the proffered evidence from Dr. Arthur Schramm requires further analysis.

Petitioner first sought discovery from Arthur Schramm in May, 2006, advising "Dr. Schramm has never been deposed or testified at any prior hearing." [3] (Doc. No. 30 at 6.) In granting the discovery, the Court reserved the question of any use of the results in this case:

As Respondent points out, Petitioner has had an opportunity to develop the record in a state court evidentiary hearing on a petition for post-conviction relief. If there is evidence which Petitioner could have developed in that proceeding and which he failed to develop, he will be precluded from presenting that evidence to this Court without a

---

**2.** There is documentary evidence that the sodium pentothal interview took place on April 11, 1986, around the noon hour and that the jury trial waiver was **filed** at 4:02 p.m. that day. There is no documentary evidence of when the jury waiver colloquy took place because no transcript can be located. The memory of the participating lawyers about the date of the jury waiver colloquy was uncertain; none could remember what the date

was. Because the jury trial waiver would not have been filed until there was agreement with counsel on the composition of the three-judge panel, counsel testified it was possible the waiver was signed earlier than the date of its filing.

**3.** Dr. Schramm testified at the mitigation phase of the trial in Common Pleas Court, but not on this subject.

showing of excusing cause and prejudice. *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). (Addendum, Doc. No. 33, at 1.)

Dr. Schramm was deposed on November 13, 2006. Although Petitioner's counsel had anticipated presenting Dr. Schramm to testify live at the evidentiary hearing, on October 2, 2007, they moved to admit his deposition under Fed.R.Civ.P. 32(a)(3) instead on grounds he had become mentally incompetent to testify (Doc. No. 64). The Court reserved the question of the admissibility of Dr. Schramm's testimony at the evidentiary hearing and later ruled that his purported expert opinions would be excluded because he had not been properly qualified as an expert (Decision and Order Regarding Use of Deposition Testimony of Arthur Schramm, M.D., Doc. No. 75).

Petitioner requested reconsideration, arguing Schramm's opinions could be admitted on the basis of his experience as opposed to expertise,[4] and arguing that the Court's objections went to the weight to be given to the testimony, rather than its admissibility (Docs. Nos. 77, 80). The Court relented, noting that, as the trier of fact, it had broader discretion to admit opinion testimony than would be true in a jury trial and allowed counsel to argue the weight of the evidence in their merit briefs. (Second Decision and Order Regarding Use of Deposition Testimony of Arthur Schramm, M.D., Doc. No. 83 at 8.) The Court also left for later decision the question whether or not Petitioner could rely on Dr. Schramm's testimony when it had not been offered in the state evidentiary hearing, the question presented by 28 U.S.C. § 2254(e)(2). *Id.* at 9–10.

Both the admissibility and weight of Dr. Schramm's testimony must now be considered.

**Admissibility: the § 2254(e)(2) Question:**

■ Under *Williams v. Taylor*, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), a habeas petitioner who has failed to develop the factual basis of a claim in state court can offer evidence to develop the fact in federal court only if he has been diligent in attempting to do that in the state courts.

In attempting to show that Dr. Schramm's testimony could be considered under 28 U.S.C. § 2254(e)(2), Petitioner argued that he had diligently attempted to develop this factual issue in the state court. He cites the following references in the state court record, reproduced in the Appendix volumes as shown:[5]

| | |
|---|---|
| Vol. 6 at 309 | This page, part of the post-conviction record, refers to the need for discovery on the thirtieth cause of action on jury waiver. When that claim is examined in the Post-conviction Petition itself (Apx. Vol. 5 at 58–60), there is no reference to the sodium pentothal issue. |
| Vol. 6 at 333 | This page is also part of the post-conviction record and refers to discovery requests, but only by making reference to the same place in the Petition referenced at p. 309. |
| Vol. 9 at 181 | Part of Petitioner's Supplemental Argument on Jury Waiver in a Capital Case in the Second District Court of Appeals-arguing that the voluntariness of the waiver can only be shown by "resort to evidence outside the record, such as, the evidence which shows that Moreland was under the influence of sodium pentothal at the time of the waiver." This does not reference any opinion submitted with the |

**4.** Relying on *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), as contrasted with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**5.** These references are made in Petitioner's Second Motion to Admit Deposition Testimony of Arthur Schramm (Doc. No. 88 at 5).

| | |
|---|---|
| | Post–Conviction petition, from Dr. Schramm or anyone else competent on the question, about the effect of sodium pentothal. The documents submitted with the Post–Conviction Petition were billing statements related to the sodium pentothal interview. |
| Vol. 9 at 226 | This reference is part of Petitioner's Memorandum in Opposition to the State's Motion for Reconsideration and merely quotes verbatim what appears at p. 181. |
| Vol. 10 at 302 | This reference is part of Petitioner's Memorandum regarding jurisdiction on appeal to the Ohio Supreme Court and merely quotes verbatim what appears at Vol. 9, pp. 181 & 226. |
| Vol. 6 at 342 | The sodium pentothal interview is mentioned in the context of validity of the jury waiver, but no discovery is sought on that issue, nor does Petitioner refer to any evidence attached to his Post–Conviction Petition on that issue. |
| Vol. 8 at 122 | The reference is to p. 28 of Petitioner's Merit Brief on Appeal from denial of post-conviction relief. It argues that the record is "unclear whether the jury waiver took place directly following the sodium pentothal interview. If so, it could mean that the waiver was obtained involuntarily," citing Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). The point is made in the context of defending the remand for evidentiary hearing on Moreland's claim that the jury waiver violated state law as announced in State v. Pless, 74 Ohio St.3d 333, 658 N.E.2d 766 (1996). No mention is made of the need for any expert testimony about the effects of sodium pentothal. |
| Vol. 8 at 174 | This is part of the same document as Vol. 8, p. 122. It asserts Petitioner may have been under the influence of sodium pentothal at the time of the jury waiver, but does not refer to any expert opinion on the matter. |
| Vol. 9 at 179 | Part of Petitioner's Supplemental Argument on Jury Waiver in a Capital Case in the Second District Court of Appeals. Mentions the evidence submitted with the Petition for Post–Conviction Relief on the sodium pentathal issue, to wit, the billing statements and insurance records regarding the procedure. |
| Vol. 10 at 46 | Page 30 of Petitioner's Memorandum in Support of Jurisdiction in the Ohio Supreme Court-mentions the billing and insurance records as in the previous item. |
| Vol. 11 at 183 | Page 9 of Petitioner's Post–Hearing Memorandum in Support of Granting Him Post–Conviction Relief on the Jury-Waiver Issue. Counsel summarizes the testimony at the evidentiary hearing on remand showing administration of sodium pentathal on April 11, 1986, and arguing that this shows Petitioner was "under the |

| | |
|---|---|
| | influence of the 'truth-serum' drugs" at the time of the jury waiver colloquy. |
| Vol. 12 at 48 | Page 10 of Petitioner's Brief on Appeal from denial of post-conviction relief which again references the billing statements and insurance records for the sodium pentathal interview. |
| Vol. 12 at 55 | Page 17 of Petitioner's Brief on Appeal quoting verbatim the argument which appears at Vol. 11, p. 183. |
| Vol. 13 at 19 | Page 12 of Petitioner's Memorandum in Support of Jurisdiction in the Ohio Supreme Court-repeats the reference to billing statements and insurance records. |
| Vol. 13 at 27 | Page 20 of Petitioner's Memorandum in Support of Jurisdiction in the Ohio Supreme Court—repeats verbatim the argument made at Vol. 11, p. 183, and Vol. 12, p. 55. |

When all of these references are examined in the context in which they were made, they do not support the conclusion that Petitioner diligently attempted to introduce expert evidence from Dr. Schramm or anyone else on the effect of sodium pentothal on the ability of Mr. Moreland to knowingly, intelligently, and voluntarily waive his right to trial by jury. Instead, the contexts of these references make it clear that Petitioner's principal argument about the validity of the jury waiver was that Mr. Moreland did not understand that, by waiving a jury, he was giving up the two-tier consideration of the death penalty he would get with a jury. (In Ohio, the jury and judge must concur on imposing capital punishment.) There was no record proof that this had been explained to him because no transcript existed or could be created of the jury waiver colloquy.[6] Under *State v. Pless*, 74 Ohio St.3d 333, 658 N.E.2d 766 (1996), a three-judge panel would not have had jurisdiction to try Mr. Moreland in the absence of a valid jury waiver. But Moreland was tried ten years before *Pless* was decided. "A new judicial ruling may be applied only

6. The court reporter is deceased, as noted above. From what this court has been told, many people have searched unsuccessfully for her stenographic notes of the hearing in the hope that someone else could transcribe them.

to cases that are pending on the announcement date. The new judicial ruling may not be applied retroactively to a conviction that has become final." *Ali v. State,* 104 Ohio St.3d 328, 819 N.E.2d 687, ¶ 6 (2004). Consequently, *Pless* does not apply to Mr. Moreland's conviction.

Thus, the sodium pentothal issue was ancillary to this principal argument. The **fact** of the sodium pentothal interview was consistently argued in the state courts, but there is nothing in the record to show that Petitioner's counsel ever tried to buttress the argument by offering expert opinion evidence on the **effect** of the sodium pentothal.[7] The exhibits attached to Moreland's Petition for Post–Conviction Relief do not advert to any expert evidence on sodium pentothal. Mr. Moreland's own Affidavit, obviously prepared by counsel, does not claim his ability to understand was impaired by the drug. (Apx., Vol. 5 at 302–302.) Petitioner's counsel filed Notices of Deposition in the Post–Conviction case, but none of them were for Dr. Schramm or any other person to testify as an expert about the effects of sodium pentothal. (Apx., Vol. 6 at 153–166). Dr. Schramm's deposition testimony establishes that he was continuously in the Dayton area in practice for the years between the trial in 1986 and November 13, 2006, when he was deposed and thus his evidence could have been taken by affidavit and submitted to the Common Pleas Court with the post-conviction petition.

Neither the references given by Petitioner nor the Court's own examination of the relevant post-conviction record documents persuade the Court that Petitioner was diligent in attempting to present expert evidence on the effect of sodium pentothal on Mr. Moreland, either by Dr. Schramm who had been involved in this particular use of the drug, or by some other expert. Because he was not diligent in presenting Dr. Schramm or some other expert on the topics on which Petitioner now seeks to introduce his expert opinion, he is barred from offering that testimony in this habeas corpus proceeding.

There is no question that Mr. Moreland vigorously sought discovery and an evidentiary hearing in the state courts. However, the diligence required by 28 U.S.C. § 2254(e)(2) is not satisfied by seeking discovery and a hearing on some issues and then seeking to introduce different sorts of proof in federal court. The evident purpose of the limitation on evidentiary hearings enacted by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No 104–132, 110 Stat. 1214) (the "AEDPA") was to have matters tried in the state courts. Because Mr. Moreland did not attempt to introduce expert evidence on the effect of sodium pentothal in the state court proceedings, he is not entitled to have Dr. Schramm's expert opinions considered here.

That does not, however, prevent the Court's considering Dr. Schramm's observations which could have been testified to by a lay witness, to wit, that he conducted an interview with Mr. Moreland after Moreland was injected with sodium pentothal and that this happened at around the noon hour on April 11, 1986.

**The Weight to Be Given to Dr. Schramm's Opinions:**

Although Dr. Schramm's testimony is excludable under 28 U.S.C. § 2254(e)(2),

---

7. In the state court record, counsel several times cite *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), for the proposition that a confession given under the influence of "truth serum" was required to be suppressed. However, the supposed truth serum in *Townsend* was scopolamine, not sodium pentothal, and Petitioner's expert on the effect of that drug held doctorates in physiology, pharmacology, and toxicology. *Id.* at 301, 83 S.Ct. 745.

the Magistrate Judge offers the following analysis of the weight of that evidence for completeness sake.

Arthur Schramm was deposed in this case November 13, 2006, more than twenty years after he conducted the interview with Mr. Moreland. At the time of his deposition, he had practiced psychiatry since 1967, but held no board certifications (Schramm Depo., Doc. No. 113, at 6). In the course of his career, he had seen approximately 48,000 patients. *Id.* at 42. Of that number, he had used sodium pentothal with slightly over a hundred. *Id.* at 41. While forensic psychiatry had been one of the psychiatric fields in which he practiced, he had never testified on behalf of the State, but always for criminal defendants. *Id.* at 8, 52. In his practice, he had used sodium pentothal for two different situations:

> One is for this purpose, someone who has committed a crime and there's a question about the truthfulness of the information they're giving. Or alleged [crime], yeah. correct. And the other is in cases where you have a trauma victim, someone who has been raped or if you suspect incest or you suspect something within the home that they really aren't going to be able to talk about because everything is repressed and you just use this to verify, if you can, what happened.

*Id.* at 14. Dr. Schramm's interview with Mr. Moreland happened about halfway through his forty-year career. He did not testify how many of the uses of sodium pentothal had been for either of these two purposes and how many had been before or after his interview with Mr. Moreland. Thus the Court does not know how much of the experience on which Petitioner relies as a foundation was before or after he formed his opinions in this case or relates to the kind of use made of the drug in this case.

At the time of his deposition, Dr. Schramm had lost his file on Mr. Moreland (Schramm Depo., Doc. No. 113, p. 10). His recollection was based on his April 28, 1986, report to Messrs. Lieberman and Hoffman. *Id.*, Exhibit 4. He mentions in the report that he had interviewed Moreland a number of times, including once under sodium pentothal. *Id.* During all four of those interviews, Moreland's account of the events of November 1, 1985, the date of the crimes, was "entirely consistent." *Id.* at 5. There is nothing in the report about any after-effects of sodium pentothal, so Dr. Schramm's testimony on November 13, 2006, about those effects was not "refreshed" by looking at any prior statement of those opinions.

Dr. Schramm's opinions, if accepted, are certainly supportive of Petitioner's position. He opined:

1. The amount of time it takes a half dose of sodium pentothal to clear the body is 8 to 40 hours. *Id.* at 22.

2. But because Moreland was a chronic alcoholic, the dose he was given could have stayed in his system for a "full one hundred twenty or more hours." *Id.* at 22–23.

3. There was no way Moreland could have comprehended what was going on in court that afternoon. *Id.* at 24.

4. In fact, given Moreland's alcoholism, "I would have to question whether he would be mentally competent to have waited the three days **or even two weeks** because of the alcohol brain damage." *Id.* at 31(emphasis added).

▮ However, the Magistrate Judge concludes that Dr. Schramm's testimony is entitled to little or no weight at all, for the following reasons:

First of all, it has none of the indicia of reliability discussed in *Daubert.* Dr. Schramm has done no clinical studies of

the after-effects of sodium pentothal, he did not relate his testimony to any discussions of such after-effects in scientific or medical literature, indeed, he did not suggest any scientific basis for his conclusions.

His conclusions are also unacceptable under *Kumho Tire* analysis. He testified he has done numerous competency evaluations, including examining Mr. Moreland in this case, but he never testified about performing any such evaluations on subjects who had been injected with sodium pentothal for "truth serum" purposes. He did not even testify that he had ever observed even one person so injected four or eight or 72 or 120 hours or two weeks after the injection to determine their competency. He is not a pharmacologist and so has no particular training or expertise in pharmacokinetics, the study of the changing effects of drugs on human physiology over time after ingestion.

Dr. Schramm gives no basis in either expertise or experience upon which this Court should give his testimony any weight. In the end, the only basis for the label "expert" that Petitioner puts on Dr. Schramm [8] is his M.D. degree and his license. This is the pure *ipse dixit* method of qualifying an expert—"I have a degree, so I must be an expert"—that the Supreme Court disapproved in *Daubert*. And in any event, the license was permanently revoked by the Ohio Medical Board within four months of the deposition on charges which raise serious questions about his ethics and therefore his credibility as a witness [9]

In sum, Arthur Schramm's purported expert opinions should be excluded from consideration because Petitioner has not shown cause for having failed to offer them in the state court. If the opinions are not excluded on that basis, they should be given little or no weight because they are without any foundation under Fed.R.Evid. 701 or 702 which would make them useful to the trier of fact and are internally inconsistent.

Second, in addition to lacking an adequate foundation, the opinion is internally inconsistent. When is it that Dr. Schramm believes the sodium pentothal would have cleared from Mr. Moreland's system? Is it four or eight or 72 or 120 hours or two weeks after the injection? How much of the drug must remain in the system to have an effect which would render the injected person incompetent?

Once Arthur Schramm's opinions are put to one side, the proper analysis of Ground One is as follows:

1. A jury trial may be waived upon the express and intelligent consent of the defendant. *Sowell v. Bradshaw*, 372 F.3d 821 (6th Cir.2004), citing *Patton v. United States*, 281 U.S. 276, 312–13, 50 S.Ct. 253, 74 L.Ed. 854 (1930). There is a signed jury waiver in this case which is presumptively valid. *State v. Fitzpatrick*, 102 Ohio St.3d 321, 326, 810 N.E.2d 927 (2004), citing *United States v. Sammons*, 918 F.2d 592, 597 (6th Cir.1990).

2. Although the courts will not presume a waiver from a silent record, the burden of demonstrating that a waiver was not valid lies with the defendant who made the waiver. *Id., citing Adams v. United States ex rel. McCann*, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942). A colloquy regarding the waiver is not constitu-

---

**8.** "the only expert witness in this case" (Objections, Doc. No. 110, at 3).

**9.** The Medical Board concluded Dr. Schramm had prescribed narcotic opioids for a patient who was addicted to heroin and had engaged in sexual misconduct with two patients. See https://license.ohio.gov./Lookup/SearchDetail.

tionally required. *Sowell v. Brad-shaw,* 372 F.3d 821 (6th Cir.2004), *distinguishing United States v. Martin,* 704 F.2d 267 (6th Cir.1983).

3. Every lawyer who observed Samuel Moreland on the afternoon of the waiver colloquy had no doubt that he was competent. Upon the testimony of all of those lawyers, the Ohio courts found that Moreland was competent. This finding of fact is entitled to deference under 28 U.S.C. § 2254(e)(1).

4. Petitioner has not overcome that deference by clear and convincing evidence because all four of those same lawyers confirmed on evidentiary hearing in this Court the same conclusion they had previously given. Nor has Petitioner demonstrated any way in which the state court conclusion is an objectively unreasonable application of clearly established federal law as enunciated in holdings of the United States Supreme Court.

Ground One for Relief is therefore without merit.

**Grounds Two, Three, Four, and Five**

■ No further analysis is needed on these grounds for relief beyond what is made in the original Report.

### Sixth Ground for Relief

**Samuel Moreland's right to a fair trial, due process and confrontation under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States' Constitution was [sic] violated when the Trial Court failed to conduct a full and meaningful evidentiary hearing into the competency and admissibility of the child witness Daron [sic] Talbott's testimony.**

### Seventh Ground for Relief

**Samuel Moreland's right to a fair trial, due process and right of confrontation under the Fifth, Sixth, Eighth**

**and Fourteenth Amendments to the United States' Constitution was [sic] violated when the Trial Court excluded opinion testimony from a defense expert on the issue of Daron [sic] Talbott's susceptibility to suggestion and influence from others regarding his eyewitness identification.**

In his Objections, Mr. Moreland challenges the original Report's conclusion that these grounds for relief are procedurally defaulted because they were presented to the state courts only as a state law claim (Objections, Doc. No. 110, at 18–19.) To prove that they were adequately raised in the state court as federal claims, Petitioner says "Mr. Moreland raised these federal constitutional claims **for the first time** in his petition for post-conviction relief in his seventh cause of action." *Id.* at 19 (emphasis supplied). This quotation proves the original Report's conclusion rather than refuting it. Both of these challenges to the conviction were supported by trial court record references and thus could have been raised on direct appeal as federal constitutional claims. Instead, they were argued as state law evidentiary matters. See, e.g., as cited in the original Report, Merit Brief on Direct Appeal to the Court of Appeals, (Apx., Vol. 2 at 90–98); Merit Brief on Direct Appeal to the Ohio Supreme Court, (Apx., Vol. 3 at 76–87).

■ Under Ohio law, a claim which could have been made on direct appeal but was not made is barred from presentation in post-conviction relief by *res judicata. State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Ohio's doctrine of *res judicata* in criminal cases, enunciated in *Perry,* is an adequate and independent state ground. *Buell v. Mitchell,* 274 F.3d 337 (6th Cir.2001); *Coleman v. Mitchell,* 268 F.3d 417 (6th Cir.2001); *Byrd v. Collins,* 209 F.3d 486, 521–22 (6th Cir.2000);

**752**

*Rust v. Zent,* 17 F.3d 155, 160–61 (6th Cir.1994); *Van Hook v. Anderson,* 127 F.Supp.2d 899 (S.D.Ohio 2001). In this case the Second District Court of Appeals upheld the rejection of these claims on the *res judicata* basis. *State v. Moreland,* 2000 Ohio App. LEXIS 14 *12, 2000 WL 5933 *5 (Ohio App. 2nd Dist. Jan. 7, 2000).

▮▮▮ However, even if these claims were to survive procedural default, they are without merit. Petitioner has cited no United States Supreme Court case law clearly establishing that (1) a criminal defendant is entitled to a psychological examination of a presumptively competent witness who has been questioned on voir dire by an experienced trial judge and found to be competent or (2) a criminal defendant is entitled to the admission of expert psychological testimony to the effect that a prosecution witness is not telling the truth.

### Grounds Eight and Nine

No further analysis is offered on these two grounds for relief beyond what is in the original Report.

### Conclusion

Based on the foregoing analysis, the Magistrate Judge again respectfully recommends the Petition be dismissed with prejudice.

February 17, 2009.